UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE CROTTY

07 CIV 6877

MYRON CORP.,

        Plaintiff,

    v.

HOLLAND USA, INC. D/B/A
AMSTERDAM PRINTING,

        Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No.

JURY TRIAL DEMANDED

RECEIVED
JUL 3 1 2007
U.S.D.C. S.D. N.Y.
CASHIERS

## COMPLAINT FOR TRADE DRESS AND TRADEMARK INFRINGEMENT, UNFAIR COMPETITION AND TRADEMARK DILUTION

Plaintiff, MYRON CORP. ("plaintiff" or "Myron"), by its attorneys, for its complaint against defendant, HOLLAND USA, INC. D/B/A AMSTERDAM PRINTING ("defendant" or "Amsterdam"), alleges as follows:

### NATURE OF ACTION

1.      Myron is the leading direct seller of promotional products and personalized business gifts, such as calendars, pens, calculators and key rings. Myron owns the registered trademark TOGETHER WE ACHIEVE THE EXTRAORDINARY, which it uses on and in connection with the sale and advertising of its personalized business products, in particular its calendars and diaries. Myron has been using its TOGETHER WE ACHIEVE THE EXTRAORDINARY as a slogan with its common law trademark TEAMWORK, in its marketing and manufacture of high quality business products since at least as early as 1995. It is through the source-identifying function of these marks, jointly and individually, that Myron and its products have become well known to the public and consumers of personalized business

products. The registered trademark TOGETHER WE ACHIEVE THE EXTRAORDINARY and the common law mark TEAMWORK, which is the subject of a pending application for registration in the United States Patent and Trademark Office, are collectively referred to herein as the Marks.

2.      Myron's calendars and diaries bearing the Marks are embodied in a unique design consisting of the prominent display of the Marks along with distinctive artwork on the front cover of the products depicting two silhouetted mountain climbers ascending a peak, as defined with more particularity in Paragraph 21 herein as the "Trade Dress."

3.      Defendant recently introduced a new line of calendars bearing the TEAMWORK name, which is identical in form and presentation to Myron's TEAMWORK trademark that Myron has used since as least as early as 1995. These products are identical to the calendars, diaries and planners that Myron sells. Defendant's TEAMWORK products also feature on the front cover a slogan – TOGETHER WE CAN ACHIEVE THE IMPOSSIBLE – that is confusingly similar to Myron's TOGETHER WE ACHIEVE THE EXTRAORDINARY trademark. In addition, defendant's products copy the overall Trade Dress of Myron's calendars, including artwork depicting two silhouetted mountain climbers ascending a peak.

4.      As a result, consumers are likely to be confused or deceived into believing that defendant and defendant's products are somehow connected or associated with Myron and its products that use the Marks and the Trade Dress. Defendant invites the confusion by closely mimicking the Marks and overall presentation of the Marks on identical goods and by replicating the Trade Dress nearly slavishly, as the following images of the parties' products demonstrate:





**Plaintiff's Calendar**                    **Defendant's Calendar**

5.      This lawsuit seeks permanent injunctive relief to stop defendant from the deliberate and intentional infringement of Myron's Trade Dress and Marks and from engaging in acts of unfair competition by falsely implying that defendant's line of TEAMWORK calendars bearing the mark TOGETHER WE CAN ACHIEVE THE IMPOSSIBLE, which defendant currently is distributing and selling, is associated with Myron and its longtime, continuous use of the Marks and Trade Dress for calendars and related products, and also seeks compensatory and punitive damages, and other appropriate monetary relief.  Unless defendant is enjoined from further misappropriation of Myron's goodwill, Myron will suffer substantial and irreparable harm.

## THE PARTIES

6.    Plaintiff, Myron Corp., is a New Jersey corporation, having its office and principal place of business at 205 Maywood Avenue, Maywood, New Jersey 07607.

7.    Defendant, Holland USA, Inc. d/b/a Amsterdam Printing, is a Minnesota corporation, having a place of business at 166 Wallins Corners Road, Amsterdam, New York 12010.

## JURISDICTION AND VENUE

8.    This Court has original jurisdiction over plaintiff's federal claims and the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), and 15 U.S.C. § 1121. In addition, this Court has pendent jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9.    This Court has personal jurisdiction over defendant on the grounds that, among other things, defendant resides in and/or engages in a continuous and systematic course of doing business in New York and/or has substantial contacts with, transacts and solicits business in and/or derives substantial monetary benefit from its contacts with the State of New York.

10.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) in that defendant is subject to personal jurisdiction in this judicial district and the events or omissions giving rise to the claims hereinafter set forth have occurred, are occurring, and unless enjoined will continue to occur in this district

## FACTS COMMON TO ALL CLAIMS

### Myron's Trade Dress and Marks

11.    Long prior to the acts of defendant alleged herein, plaintiff and its predecessors adopted and have used continuously the Trade Dress and the Marks since at least as

early as 1995 on and in connection with the manufacture and sale in interstate commerce of high-quality, personalized business products, including calendars and diaries.

12.     Myron's history dates back more than fifty years to its founding by Myron and Elaine Adler. The Adler family continues to run the business, which has grown enormously. Myron was named the number one direct seller of promotional products by the trade group the Advertising Specialty Institute in its 2003 report and remains the leader in personalized business gifts. Since the company's founding in 1949, Myron has built relationships with more than one million companies.

13.     Since at least as early as 1995 and long prior to the acts of defendant alleged herein, Myron has continuously used and continues to use the Trade Dress and the Marks on and in connection with its product assortment, most significantly for various calendar formats that it sells through its direct marketing vehicles, which include its catalog, website and telephone sales team.

14.     In addition to advertising and offering its products for sale through its own catalog and website, Myron actively solicits new customers and orders through the direct mail channel of trade, including by prospecting, which is the industry term for the unsolicited mailing of a product sample, such as a calendar, to a potential customer, often with the customer's name printed on the product. In this way, the customer can see how the product will look, and hopefully, the prospect will place future orders for the promotional products. Myron frequently engages in prospecting. From 2002 to 2006, Myron distributed millions of calendars to prospective and actual customers featuring the Trade Dress and the Marks, at a cost of more than $16 million.

15. Since 2002, Myron also has expended another $2.6 million to advertise and promote its products bearing the Trade Dress and the Marks, bringing its total advertising and promotional expenditures between 2002 and 2006 to in excess of $19 million.

16. Since 2001, Myron has sold more than 26 million units of products featuring the Trade Dress and the Marks. During that same time period, Myron earned revenues exceeding $55 million from the sale of goods bearing the Trade Dress and the Marks.

17. As a result of such extensive sales, the public and the trade have come to identify and associate the Trade Dress and the Marks with Myron as the source or origin of said merchandise and as a means whereby said merchandise is distinguished from similar merchandise of other companies.

18. Myron is the record owner of United States Trademark Reg. No. 2,297,367 of the mark TOGETHER WE ACHIEVE THE EXTRAORDINARY. The registration includes calendars, diaries and metal key tags. The registration issued on December 7, 1999. The aforesaid registration is valid, subsisting, in full force and effect, and incontestable. A copy of Reg. No. 2,297,367 of the mark and printout from the United States Patent and Trademark Office Trademark Electronic Search System regarding the subject registration are annexed hereto and incorporated herein by reference as Exhibit A.

19. Myron also is the record owner of pending United States Trademark Application Serial No. 77/233,410 for registration of the mark TEAMWORK for calendars, diaries, note pads and metal key tags.

20. Myron also has established common law rights in and to the trademark TEAMWORK alone and in combination with TOGETHER WE ACHIEVE THE

EXTRAORDINARY, which Myron has used continuously since at least as early as 1995 and which it continues to use on and in connection with calendars and diaries, among other products.

21.    Myron's products bearing the Marks also consistently use and have a distinctive and protectible Trade Dress in their overall look and design.  The Trade Dress consists of a weekly or monthly calendar whose cover includes (1) the trademark TEAMWORK in large capital letters with a noticeable space between each letter rendering prominence to the mark; (2) above the trademark TOGETHER WE ACHIEVE THE EXTRAORDINARY printed in a smaller font in sentence case; (3) above background artwork depicting two silhouetted mountain climbers (a) connected by climbing ropes; (b) one higher than the other; (c) facing each other, with the climber in the higher position assisting the other climber; (d) standing on a silhouetted peak in the foreground; (e) with lighter-colored, mountain peaks in the background that highlight the silhouette of one or both climbers; and (f) the overall scene depicted in two-tones with the bottom and foreground printed in black, all the elements of which collectively are defined as the "Trade Dress".  Exhibit B is a representative example of a Myron product that depicts the Trade Dress.

22.    For more than fifty years, Myron has attained and maintained a reputation for developing and offering an expanding number of and creative and desirable business products both domestically and internationally.  As a result of Myron's extensive marketing and promotional efforts and the high quality of its products, Myron and its products have achieved an outstanding reputation among consumers.  Myron's products bearing its Trade Dress and the Marks have become well and favorably known in the industry and to the public.

23.    As a result of the extensive advertising, promotion and sale of merchandise with the Trade Dress and the Marks, and because of the superior quality of such

merchandise, the Trade Dress and the Marks, both separately and in combination, are well-known, and have therefore acquired secondary meaning and goodwill of inestimable value.

24.    Based on their wide promotion and extensive sales, the public, consumers, and the trade have come to recognize that products bearing the Trade Dress and the Marks originate with Myron, and the Trade Dress and the Marks represent a visible symbol of the quality of the goods bearing same.

**Amsterdam's Infringing Use of Myron's Trade Dress and Marks**

25.    Defendant, like Myron, designs and distributes promotional products that it offers for sale through its catalog and website and direct mail channels, including prospecting.

26.    Defendant, without authorization or license from Myron, has willfully and intentionally used, reproduced, copied and/or infringed Myron's Trade Dress and the Marks in connection with defendant's manufacturing, distributing, exporting, importing, advertising, marketing and/or offering to sell infringing copies of products bearing confusingly similar versions of Myron's Trade Dress and the Marks ("the Infringing Products").

27.    Defendant has been advertising and soliciting orders for the Infringing Products by calling them the "United Teamwork Planner." Defendant's promotional materials state that the planner will carry the "meaningful slogan, 'Teamwork – Together we can achieve the impossible,'" which will appear "in stunning gold print on the front cover." A redacted copy of one such "prospecting" solicitation that defendant circulated recently is attached hereto as Exhibit C. Accompanying the solicitation in Exhibit C was a sample pocket calendar bearing on the cover the word TEAMWORK in gold print with large capital letters, and underneath TEAMWORK is TOGETHER WE CAN ACHIEVE THE IMPOSSIBLE, which appears in sentence case, with only the first letter of the first word being capitalized, as shown in Exhibit D.

28.    In addition to mailing Infringing Products to prospective customers, defendant is actively advertising and offering the Infringing Products for sale on its website, www.amsterdamprinting.com, and, upon information and belief, through its printed catalog. Defendant's website features several examples of products bearing Myron's TEAMWORK Mark and the infringing tagline TOGETHER WE CAN ACHIEVE THE IMPOSSIBLE, including the following:

| Item | Name |
| --- | --- |
| 40925 | United Teamwork Duet Monthly |
| 40922 | United Teamwork Duet Weekly |
| 40921 | United Teamwork Pocket Cal. Weekly |
| 41095 | Achieve Teamwork Pocket Cal. Weekly |
| 41096 | Achieve Teamwork Pocket Cal. Monthly |
| 41091 | Achieve Teamwork Duet Weekly |
| 41092 | Achieve Teamwork Duet Monthly |

In addition to infringing the Marks, defendant's "Achieve Teamwork" products (item Nos. 41091, 41092, 41095 and 41096) replicate the overall Trade Dress of Myron's comparable products. True and accurate printouts from defendant's website as of July 31, 2007 are attached as Exhibit E, which depicts the Infringing Products in defendants' "Achieve Teamwork" product line. Exhibit F depicts an actual sample of defendants' Infringing Products.

29.    Defendant has affixed to its calendars in a prominent manner marks and designs that are confusingly similar to Myron's Trade Dress and Marks and is offering for sale and selling these goods.

30.    Defendant has knowingly manufactured, advertised, offered for sale, sold and distributed the Infringing Products in interstate, intrastate and foreign commerce, including in the State of New York and in this judicial district.

31.    Defendant is not authorized by Myron to manufacture, advertise, distribute, sell or offer to sell products bearing marks and designs that infringe upon Myron's Trade Dress and Marks.

32.    Defendant's conduct has caused and will continue to cause irreparable injury to Myron unless enjoined by this Court.  Myron has no adequate remedy at law.

## COUNT ONE

### Trade Dress Infringement - 15 U.S.C. § 1125(a)

33.    Plaintiff repeats and incorporates herein by reference each and every one of the averments contained in paragraphs 1 through 32, inclusive, of this complaint with the same force and effect as if hereinagain set forth in detail.

34.    As a result of Myron's experience, service and high-quality products, its goods, including those featuring the Trade Dress and the Marks, have become widely known and acquired a worldwide reputation for excellence.  The Trade Dress has become associated specifically with Myron's products.  As such, and because consumers identify the Trade Dress as having its source in Myron, the Trade Dress has attained secondary meaning.

35.    The Trade Dress is inherently distinctive.

36.    The Trade Dress is non-functional.

37.    The acts of the defendant described herein were undertaken without the permission, license or consent of Myron and have caused and are causing damage to Myron.

38.    The acts of the defendant's described herein are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of defendant with Myron, or as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by Myron in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

39.    By reason of the acts of the defendant alleged herein, Myron has, and will, suffer irreparable damage to its reputation and a loss of sales and profits that Myron would have made but for said acts of defendant.

40.    Defendant's wrongful actions constitute trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT TWO

### Federal Trademark Infringement - 15 U.S.C. § 1114

41.    Plaintiff repeats and incorporates herein by reference each and every one of the averments contained in paragraphs 1 through 40, inclusive, of this complaint with the same force and effect as if hereinagain set forth in detail.

42.    Without Myron's authorization or consent, and having knowledge of Myron's well-known and prior rights in its registered trademark TOGETHER WE ACHIEVE THE EXTRAORDINARY, and the fact that defendant's goods bear a mark that is confusingly similar to said mark, defendant has manufactured, distributed, offered for sale and/or sold the Infringing Products to the consuming public in or affecting interstate commerce in a manner that is likely to cause confusion, mistake, or deception as to the true source or sponsorship of defendant's goods and services.

43.     Defendant's use of a mark that infringes Myron's registered mark TOGETHER WE ACHIEVE THE EXTRAORDINARY is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Infringing Products, and is likely to deceive the public into believing the Infringing Products originate from, are associated with/or are otherwise authorized by Myron, all to the damage and detriment of Myron's reputation and goodwill.

44.     Defendant's above-described actions constitute infringement of Myron's registered trademark in violation of its rights under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

## COUNT THREE

## Federal Unfair Competition/False Designation of Origin - 15 U.S.C. § 1125(a)

45.     Plaintiff repeats and incorporates herein by reference each and every one of the averments contained in paragraphs 1 through 44, inclusive, of this complaint with the same force and effect as if hereinagain set forth in detail.

46.     Defendant's unauthorized use in interstate commerce Myron's Trade Dress and the Marks misrepresents and falsely describes to the general public the origin and source of the Infringing Products and creates a likelihood of confusion among purchasers as to both the source and sponsorship of such merchandise.

47.     Defendant's unlawful, unauthorized and unlicensed manufacturing, advertising, distributing, offering for sale and/or selling of the Infringing Products creates express and implied misrepresentations that falsely imply Myron's authorization or approval of the Infringing Products, all to defendant's profit and Myron's damage.

48.     Defendant's false, misleading and infringing activities are likely to cause confusion among the general public as to the origin or sponsorship of the Infringing Products.

49.     Defendant's wrongful actions constitute unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT FOUR

### New York Trademark Dilution – New York General Business Law § 360(l)

50.     Plaintiff repeats and incorporates herein by reference each and every one of the averments contained in paragraphs 1 through 49, inclusive, of this complaint with the same force and effect as if hereinagain set forth in detail.

51.     Defendant's use of marks that dilute and infringe upon Myron's Trade Dress and Marks on or in connection with the manufacturing, advertising, offering for sale and sale and distribution of the Infringing Products is likely to dilute the distinctive quality of the Trade Dress and the Marks, and/or cause confusion, mistake or deception.

52.     Defendant's acts have caused damage to Myron by tarnishing its valuable reputation and diluting or blurring the distinctiveness of Myron's Trade Dress and Marks in violation of New York General Business Law § 360(l), and will continue to tarnish and destroy the value of the Trade Dress and the Marks unless enjoined by this Court.

## COUNT FIVE

### New York Common Law Trademark Infringement

53.     Plaintiff repeats and incorporates herein by reference each and every one of the averments contained in paragraphs 1 through 52, inclusive, of this complaint with the same force and effect as if hereinagain set forth in detail.

54. Myron has built up valuable goodwill in the Trade Dress and the Marks and the public has come to associate the Trade Dress and the Marks with Myron's products, as a symbol of their reputation for quality.

55. Defendant has unlawfully used marks that are confusingly similar to the Trade Dress and the Marks, and such use constitutes trademark infringement in violation of the common law of New York.

56. Defendant's activities are designed with the intent to mislead and/or deceive the trade and public into believing that the Infringing Products are affiliated with, authorized, endorsed, sponsored and/or sanctioned by Myron or are connected or associated in some way with Myron, which they are not. Such acts have caused and continue to cause confusion as to the source and/or sponsorship of the Infringing Products.

57. The acts and conduct of defendant complained of herein have damaged Myron and will, unless enjoined, further impair, if not destroy, the value of the Trade Dress and the Marks and the goodwill associated therewith.

58. Defendant has engaged and continues to engage in this activity knowingly and willfully.

59. Defendant's acts of common law trademark infringement and unfair competition, unless enjoined by this Court, will continue to cause Myron to sustain irreparable damage, loss and injury for which Myron has no adequate remedy at law.

## COUNT SIX

## New York Common Law Unfair Competition

60.    Plaintiff repeats and incorporates herein by reference each and every one of the averments contained in paragraphs 1 through 59, inclusive, of this complaint with the same force and effect as if hereinagain set forth in detail.

61.    Myron, by virtue of its prior adoption and use in interstate commerce of its TEAMWORK mark, both alone and in combination with the mark TOGETHER WE ACHIEVE THE EXTRAORDINARY, in this judicial district and elsewhere, has acquired, established, and owns common law trademark and service mark rights in the TEAMWORK mark, which serve to identify to the public certain goods and services that are offered only by Myron, and the goods and services offered in connection with the mark are regarded by the public as being offered by, sponsored by, approved by, authorized by, associated with, or affiliated with Myron.

62.    Defendant has intentionally and unlawfully copied and used the TEAMWORK mark, without authorization, for the calculated purpose of passing off its goods and services as those of Myron, of trading upon the significant goodwill and reputation of Myron, and of deceiving the public as to the true nature and characteristics of defendant's products, and falsely suggest a connection with Myron, all to defendant's profit and to the damage and detriment of Myron.

63.    Defendant's past and continued use of the TEAMWORK mark constitutes copying and imitation of the TEAMWORK mark, falsely designates the origin of the Infringing Products, and is likely to cause consumer confusion, mistake, or deception.

64.    Defendant's conduct constitutes unfair competition under the common law of the State of New York.

## PRAYER FOR RELIEF

WHEREFORE, Myron prays for the following relief:

A.    Permanently enjoin and restrain defendant, its officers, agents, servants, employees and attorneys, and all those acting in active concert or participation with them or any of them, from the following activities:

(i)    Using in any manner the Marks and any other marks or designations that infringe upon plaintiff's Marks that are likely to cause confusion, deception, or mistake on or in connection with the manufacturing, advertising, distributing, offering for sale, or selling of any product not plaintiff's or not authorized by plaintiff to be sold in connection with any goods of plaintiff;

(ii)    Passing off, inducing, or enabling others to sell or pass off any product as and for products produced by plaintiff, that are not plaintiff's or not produced under the control and supervision of plaintiff and approved by plaintiff for sale with the Trade Dress or the Marks;

(iii)    Producing, buying, selling, transferring, using or handling labels or other markings referring or relating in any way to plaintiff or its Trade Dress or Marks;

(iv)    Infringing plaintiff's Trade Dress or Marks in connection with the advertising, offering for sale, or sale of any goods or services;

(v)    Representing, suggesting or committing any acts calculated to cause purchasers to believe that the Infringing Products are those sold under the control and supervision of plaintiff or sponsored or approved by, or connected with or guaranteed by, or produced under the control and supervision of plaintiff by plaintiff or that defendant has any relationship whatsoever, whether direct or indirect, with plaintiff;

(vi)    Otherwise competing unfairly with plaintiff;

(vii)    Manufacturing, advertising, distributing, offering for sale, or selling any products featuring the Trade Dress used by plaintiff with its products that bear the Marks or any confusingly similar variations thereof; and

(viii)    Diluting and infringing plaintiff's Marks and damaging plaintiff's goodwill.

B.    Require defendant forthwith to recall and deliver up for destruction all Infringing Products and any advertising or promotional materials depicting the Infringing Products in its possession, custody or control or in the possession, custody or control of any of its agents;

C.    Order defendant, pursuant to 15 U.S.C. § 1116(a), to file with the Court and serve upon plaintiff, within thirty (30) days of the entry of the injunction prayed for herein, a report in writing under oath setting forth in detail the form and manner in which it has complied with the permanent injunction;

D.    Require defendant, pursuant to 15 U.S.C. § 1117, to account to plaintiff for any and all profits derived by defendant, and for all damages sustained by plaintiff by reason of defendant's acts complained of herein and that the amount of damages for infringement of plaintiff's Trade Dress and Marks be increased by a sum not exceeding three times the amount thereof as provided by law;

E.    Order defendant to pay plaintiff punitive damages in a sum to be determined at trial on the basis of deliberate and intentional infringement, unfair competition and dilution;

F.    Order defendant, pursuant to 15 U.S.C. § 1117, to pay all of plaintiff's

reasonable attorneys' fees, costs and disbursements of this civil action; and

G.    Such other and further relief as the Court may deem just and proper.


Dated:    New York, New York
          July 31, 2007

                              **COLUCCI & UMANS**

                              By: _Frank J. Colucci_
                              Frank J. Colucci (FC-8441)
                              Richard P. Jacobson (RJ-2843)
                              218 East 50th Street
                              New York, New York 10022
                              Telephone: (212) 935-5700
                              Facsimile:  (212) 935-5728
                              Email:  email@colucci-umans.com

                              Attorneys for Plaintiff

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues triable by a jury.

Dated:     New York, New York
             July 31, 2007

                         **COLUCCI & UMANS**

                     By:_____
                     Frank J. Colucci (FC-8441)
                     Richard P. Jacobson (RJ-2843)
                     218 East 50th Street
                     New York, New York 10022
                     Telephone: (212) 935-5700
                     Facsimile:  (212) 935-5728
                     Email:  email@colucci-umans.com

                     Attorneys for Plaintiff

# EXHIBIT A

Int. Cls.: 6, 9, 14, 16, 21, 25 and 28

Prior U.S. Cls.: 2, 5, 12, 13, 14, 21, 22, 23, 25, 26, 27, 28, 29, 30, 33, 36, 37, 38, 39, 40 and 50

## United States Patent and Trademark Office

Reg. No. 2,297,367
Registered Dec. 7, 1999

## TRADEMARK
### PRINCIPAL REGISTER

# TOGETHER WE ACHIEVE THE EXTRAORDINARY

MYRON MANUFACTURING CORPORATION (NEW JERSEY CORPORATION)
205 MAYWOOD AVENUE
MAYWOOD, NJ 07607

FOR: METAL KEY TAGS., IN CLASS 6 (U.S. CLS. 2, 12, 13, 14, 23, 25 AND 50).
FIRST USE 9-0-1996; IN COMMERCE 9-0-1996.
FOR: MOUSE PADS, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).
FIRST USE 6-0-1995; IN COMMERCE 6-0-1995.
FOR: LAPEL PINS AND DESK CLOCKS, IN CLASS 14 (U.S. CLS. 2, 27, 28 AND 50).
FIRST USE 9-0-1994; IN COMMERCE 9-0-1994.
FOR: LETTER OPENERS, PENS, POSTERS, GREETING CARDS, PRESENTATION FOLDERS, CALENDARS, DIARIES, DESKTOP OR-

GANIZERS, IN CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).
FIRST USE 7-0-1995; IN COMMERCE 7-0-1995.
FOR: MUGS, IN CLASS 21 (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).
FIRST USE 8-0-1996; IN COMMERCE 8-0-1996.
FOR: BASEBALL-STYLE CAPS, IN CLASS 25 (U.S. CLS. 22 AND 39).
FIRST USE 1-0-1997; IN COMMERCE 1-0-1997.
FOR: GOLF TEES AND GOLF BALL MARKERS, IN CLASS 28 (U.S. CLS. 22, 23, 38 AND 50).
FIRST USE 1-0-1997; IN COMMERCE 1-0-1997.

SER. NO. 75-389,191, FILED 11-12-1997.

ANITA ODONOVICH, EXAMINING ATTORNEY

Trademark Electronic Search System (TESS)

**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System(Tess)

*TESS was last updated on Wed Jul 18 04:06:44 EDT 2007*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | Browse Dict | SEARCH OG | BOTTOM | HELP |

Logout  Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)* |

## Typed Drawing

| | |
|---|---|
| **Word Mark** | TOGETHER WE ACHIEVE THE EXTRAORDINARY |
| **Goods and Services** | IC 006. US 002 012 013 014 023 025 050. G & S: metal key tags,. FIRST USE: 19960900. FIRST USE IN COMMERCE: 19960900 |
| | (CANCELLED) IC 009. US 021 023 026 036 038. G & S: [mouse pads]. FIRST USE: 19950600. FIRST USE IN COMMERCE: 19950600 |
| | (CANCELLED) IC 014. US 002 027 028 050. G & S: [lapel pins and desk clocks]. FIRST USE: 19940900. FIRST USE IN COMMERCE: 19940900 |
| | IC 016. US 002 005 022 023 029 037 038 050. G & S: [letter openers, pens, posters, greeting cards, presentation folders,] calendars, diaries, [desktop organizers]. FIRST USE: 19950700. FIRST USE IN COMMERCE: 19950700 |
| | (CANCELLED) IC 021. US 002 013 023 029 030 033 040 050. G & S: [mugs]. FIRST USE: 19960800. FIRST USE IN COMMERCE: 19960800 |
| | (CANCELLED) IC 025. US 022 039. G & S: [baseball-style caps]. FIRST USE: 19970100. FIRST USE IN COMMERCE: 19970100 |
| | (CANCELLED) IC 028. US 022 023 038 050. G & S: [golf tees and golf ball markers]. FIRST USE: 19970100. FIRST USE IN COMMERCE: 19970100 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Design Search Code** | |
| **Serial Number** | 75389191 |
| **Filing Date** | November 12, 1997 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |

Trademark Electronic Search System (TESS)

| | |
|---|---|
| **Published for Opposition** | September 14, 1999 |
| **Change In Registration** | CHANGE IN REGISTRATION HAS OCCURRED |
| **Registration Number** | 2297367 |
| **Registration Date** | December 7, 1999 |
| **Owner** | (REGISTRANT) MYRON MANUFACTURING CORPORATION CORPORATION NEW JERSEY 205 Maywood Avenue Maywood NEW JERSEY 07607 |
| | (LAST LISTED OWNER) MYRON CORP. CORPORATION NEW JERSEY 205 MAYWOOD AVENUE MAYWOOD NEW JERSEY 07607 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | FRANK J. COLUCCI |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. PARTIAL SECT 8 (6-YR). |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

# EXHIBIT

# B



2 0 0 8

# T E A M W O R K

Together we achieve the extraordinary

To Order Call MYRON
at 800-526-9766
TEAMWORK BLUE
MOUNTAIN DATE LOG
Style #5Z418-53

# EXHIBIT
# C



Watkins Corners Road
Amsterdam, New York 12010
(800) 833-6231
Fax: (518) 843-5204
www.amsterdamprinting.com

## 10% DISCOUNT!

# Introducing The New...
# United Teamwork Planner!

Dear

As a business person, you know how important it is to advertise and how expensive it can be. That's why I'm pleased to present you with a cost-effective way to promote your company name and special advertising message every day of the year - the **2008 United Teamwork Planner!**

Your valued customers and associates will be pleased and impressed when you give them the **United Teamwork Planner.** Your company name and custom message will be hot-stamped in gold foil on the smooth, thoughtfully designed cover. The meaningful slogan, "Teamwork - Together we can achieve the impossible," also appears in stunning gold print on the front cover.

Its upscale features ensure the **United Teamwork Planner** will be kept and used the entire year:

- **The sturdy construction and innovative design of the cover make it both powerful and durable.**

- **A motivational theme adds value to this exciting and useful organizer.**

- **The cover motivates while the insert has ample space to write down appointments, names, phone numbers and more.** Now that's great value!

## Special Offer — Receive a 10% Discount!

I'm so sure the *NEW* United Teamwork Planner will help you promote your business, I'm extending you this special offer — receive a 10% Discount by ordering now!

To take advantage of this *incredible offer*, we must receive your order within 30 days. Simply call TOLL FREE or fill out this handy order form and fax or mail it in to us in the postage-paid envelope. You can also order through our fast and convenient website, www.amsterdamprinting.com.

Sincerely,

P.S. Remember to reference priority code P9634 when placing your order.

## (800) 833-6231 ☎ Fax: (518) 843-5204 ☐ www.amsterdamprinting.com

---

☑ **Yes! Order my 2008 United Teamwork Planners! I'll receive a 10% Discount!**

### Weekly Calendar • Item #40921

| Quantity | Catalog Price | 10% Discount |
|---|---|---|
| ☐ 2,500 | $2.79 ea. | $2.51 ea. |
| ☐ 1,000 | $2.89 ea. | $2.60 ea. |
| ☐ 500 | $2.99 ea. | $2.69 ea. |
| ☐ 250 | $3.09 ea. | $2.78 ea. |
| ☐ 100 | $3.19 ea. | $2.87 ea. |
| ☐ 50 | $3.29 ea. | $2.96 ea. |

**Color**
Blue
& Black

**Imprint Color**
Gold

**Option**
☐ Gift Boxes
29¢ each
Item #30261
On Sale
25¢ each!

**Ship Now & Bill**
☐ When Ready
☐ August
☐ September
☐ October

### IMPRINT COPY INSTRUCTIONS:
Please type or print clearly - Up to 5 lines in Gold.

1. _____
2. _____
3. _____
4. _____
5. _____

Logo Position:  ☐ Left of Imprint   ☐ Right of Imprint
Please complete form, or call: 1-800-833-6231. Add $8.55 plate charge. Shipping and handling are extra. FIFS responds and sales tax. Allow to 10% oversicker run. To include your logo, add $29.95 for a one-time art charge, unless we already have your logo on file. Please send clean, clear, black & white, camera-ready artwork. Terms. Net 10 days to retail firms. Offers and pricing subject to change without notice.

**Ship to:**
Please, No P.O.
Boxes for Ship
to address

### PAYMENT METHOD:
☐ Bill My Credit Card   ☐ Check Enclosed   ☐ Bill Me
                                                Pending Credit Approval
☐ MASTERCARD  ☐ VISA  ☐ DISCOVER  ☐ AMERICAN EXPRESS

Account # _____
Exp. Date _____ Purchase Order # _____
Phone _____ Fax _____
E-mail _____ @ _____
SIGNATURE _____
                                    (Your order must be signed)
Providing fax and e-mail information is optional and will be used to communicate with you on this order and on special offers. If you do not wish to be contacted by these means, please do not provide this information.

CUSTOMER # [          ]

PRIORITY CODE [          ]

# EXHIBIT
# D



# EXHIBIT
# E









# EXHIBIT
# F

