UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------x
                                            :
MYRON CORP.,                                :
                    Plaintiff               :      Case No. 07-CV-6877 (PAC)
                    v.                      :
                                            :
HOLLAND USA, INC D/B/A AMSTERDAM            :
PRINTING,                                   :
                    Defendants.             :
                                            :
-------------------------------------------------------------x
```

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S REQUEST FOR A PRELIMINARY INJUNCTION

Mario Aieta (MA 2228)
Betsy C. Judelson (BJ 1107)
Fross Zelnick Lehrman & Zissu, P.C.
866 United Nations Plaza
New York, New York 10017
Tel.:  (212) 813-5900
Fax:  (212) 813-5901
Attorneys for Defendant
Holland USA d/b/a/ Amsterdam Printing

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS .................................................................................................2

ARGUMENT ....................................................................................................................8

    I.    PLAINTIFF MAKES NO CREDIBLE SHOWING OF IRREPABLE HARM ............8

    II.    MYRON CANNOT SUCCEED ON THE MERITS OF ANY OF ITS CLAIMS ......11

        A.    Copying Is Not Actionable If Material Copied Is Not Proprietary to
             Plaintiff ..............................................................................................................11

        B.    Plaintiff Cannot Prevail On Its Trade Dress Claim ............................................13

             1.    The primary significance of the calendar design is aesthetic and is
                  not to designate source ..............................................................................13

             2.    These is no likelihood of confusion .........................................................15

        C.    Plaintiff Cannot Prevail On Its Claims Based On The Phrase "Together We
             Achieve The Extraordinary ................................................................................16

        D.    Plaintiff Cannot Prevail On Its Common Law Trademark Claim Based
             On The Word TEAMWORK ..............................................................................20

    III.    A PRELIMINARY INJUNCTION WILL CAUSE DEFENDANT TO SUFFER
        SEVERE HARDSHIP .......................................................................................20

    CONCLUSION.................................................................................................................21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*American Home Products Corp. v. Barr Labs*, 8334 F.2d 368 (3d Cir. 1987)......................12

*Bigstar Entertainment, Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185 (S.D.N.Y. 2000)......8

*Brown v. Gilmore*, 533 U.S. 1301 (2001)...............................................................................8

*Buti v. Impressa Persoa, S.R.L.*, 139 F.3d 98 (2d Cir. 1998) ................................................17

*Chandon Champagne Corp. v. San Marino Wine Corp.*, 335 F.2d 531 (2d Cir. 1964) ..........9

*Citibank, N.A. v. Citytrust*, 756 F.2d 273 (2d Cir. 1985).......................................................10

*Comic Strip, Inc. v. Fox Televisions Stations, Inc.*, 710 F. Supp. 976 (S.D.N.Y. 1989)........10

*Cullman Ventures, Inc. v. Columbian Art Works, Inc.*, 717 F. Supp. 96 (S.D.N.Y. 1989).....19

*Damn I'm Good, Inc. v. Sakowitz, Inc.*, 514 F. Supp. 1357 (S.D.N.Y. 1981) ................16, 17

*Duraco Products v. Joy Plastic Enterprises*, 40 F.3d 1431 (3d Cir. 1994)...........................12

*First Savings Bank, F.S.B. v. First Bank Systems, Inc.*, 101 F.3d 645 (10th Cir. 1996).........19

*Inwood Laboratories v. Ives Laboratories, Inc.*, 456 U.S. 844 (1982)..................................13

*Knitwaves Inc. v. Lollytogs, Ltd.*, 71 F3d. 996 (2d Cir. 1995) ..................................12, 13, 14

*Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373 (2d Cir. 1997).................21

*Lexington Management Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271 (S.D.N.Y. 1998) .....................................................................................................8

*Libman Co. v. Vining Industries, Inc.*, 69 F.3d 1360 (7th Cir. 1995) .....................................12

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108 (2d Cir. 2006) .................20

*Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7 (2d Cir. 1985) ............................................10

*Moose Creek, Inc. v. Abercrombie & Fitch Co.*, 331 F. Supp. 2d 1214 (C.D. Cal. 2004) ....20

*Nina Ricii, S.A.R.L. v. Gemcraft, Ltd.*, 612 F. Supp. 1520 (S.D.N.Y. 1985).........................11

*In re Olin Corp.*, 181 U.S.P.Q. 182 (T.T.A.B. 1973) ...........................................................17

*Rodriguez v. DeBuono*, 175 F.3d 227 (2c Dir. 1999) ...........................................................9

*Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27
    (2d Cir. 1995) ...........................................................................................................8

*Tone Brothers, Inc. v. Sysco Corporation*, 28 F.3d 1192 (Fed. Cir. 1994) ...........................14

*Total Control Apparel v. DMD International Imports, LLC*, 409 F. Supp. 2d 403
    (S.D.N.Y. 2006) .......................................................................................................9

*Tough Traveler, Ltd. v. Outbound Productions*, 60 F.3d 964 (2d Cir. 1995) ........................10

*Vera Products Co. v. Bifold Co.*, 50 F.3d 189 (3d Cir. 1995) ...............................................12

*Wal-Mart Stores, Inc. v. Samara Brothers*, 529 U.S. 205 (2000) .........................................13

*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001) .....................................13, 14

## FEDERAL STATUTES

15 U.S.C. § 1064 .................................................................................................................18

## MISCELLANEOUS

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
    (4th ed. 2006) ........................................................................................................11

**PRELIMINARY STATEMENT**

Defendant Holland USA, Inc. d/b/a Amsterdam Printing ("Defendant" or "Holland"), respectfully submits this memorandum of law in opposition to Plaintiff Myron Corp.'s ("Plaintiff" or "Myron") request for a preliminary injunction.

The extraordinary relief that Myron seeks is wholly unwarranted under the circumstances. Myron admits that it has known about the allegedly infringing Holland calendars since June 18, 2007, and the evidence strongly supports the conclusion that Myron knew or should have known about the Holland calendars since January 2007. Nonetheless, in spite of the extremely time sensitive nature of the products at issue,[1] Holland waited until September 10, 2007, before it made its oral request to the court for a preliminary injunction. This delay, calculated to cause the maximum amount of harm to Holland, is reason enough to deny Myron's request for a preliminary injunction.

Even if Myron's request for a preliminary injunction could be considered timely, that request should be denied because Myron does not have a viable claim for trademark infringement against Holland. The product configuration that Myron now claims as trade dress does not serve primarily as a source designator; instead of promoting its product configuration as a source designator, Myron advertises the aesthetically pleasing and useful "message" conveyed by its product configuration. Myron's registered trademark, TOGETHER WE ACHIEVE THE EXTRAORDINARY, is an extremely weak mark entitled to very limited protection. Myron itself has admitted that motivational phrases like that used by Holland – "Together we can achieve the impossible" – are not confusingly similar to Myron's trademark. Finally, Myron

---

[1] At the initial conference before the Court on September 10, 2007, counsel for Holland compared the products at issue to "produce," claiming that they go stale very quickly.

cannot show that its alleged common law trademark, TEAMWORK, has obtained secondary meaning; that word is found on multiple competing motivational products that are not made by Myron.

For these reasons, Myron's request for a preliminary injunction must be denied.

## STATEMENT OF FACTS

Myron and Holland are competitors in the area of personalized calendar products. Myron and Holland sell their calendar products to small and medium sized businesses – dry cleaners, accountants, beauty salons – who in turn give those products away to their own customers. The products are stamped with the name and address of the business that is giving away the product to its customers. The intended user of the calendar products, therefore, is not the person or business that buys the product from Holland or Myron. The businesses that buy the product from Holland and Myron buy in bulk. Both companies have minimum orders of at least 50 units. Transcript of Patrick Caillat, dated Sept. 19, 2007 ("Caillat Dep. Tr.") 64:12-13, [2] Declaration of Kevin Kirbey ("Kirbey Decl.") at ¶ 2. The average order size is much larger. *Id.*

Myron claims that since 1995 it has been using the phrase "Together we achieve the extraordinary," the word TEAMWORK, and "a unique design consisting of the prominent display of the Marks along with distinctive artwork on the front cover of the products depicting two silhouetted mountain climbers ascending a peak." Complaint ¶ 1-2. Myron often refers to this overall product configuration as a "theme" called "Teamwork Peak." Declaration of Mario Aieta ("Aieta Decl.") Ex. D.    Myron claims that this product configuration constitutes

---

[2] The non-confidential portion of the transcript of the Caillat deposition is attached as Exhibit M to the Aieta Declaration.

distinctive trade dress protectable as a trademark under federal law and under the common law of the State of New York.  Complaint ¶ 34, 54.

Myron markets its Teamwork Peak products by sending catalogs and personalized samples of its products to customers and prospects by mail.[3]  Caillat Dep. Tr. 36:11-17; Complaint ¶ 14.  None of Myron's marketing materials refer to the Teamwork Peak theme as a trademark or as trade dress.  Nor does Myron ever suggest that the Teamwork Peak theme identifies for the consumer the source of the calendar products bearing that theme.  Myron's marketing materials do not include any "look for" advertising focusing on its Teamwork Peak theme.  Instead, Myron's marketing emphasizes the message conveyed by the Teamwork Peak theme, that being the message that the buyer of the product – the small or medium sized business – will be communicating to its customers and/or employees by distributing to those people the Myron products bearing the theme:

> "As your customers, prospects, employees and associates record appointments, jot down frequently called numbers or check the atlas, your company's name and address, imprinted in gold, will be seen time and again, and your commitment to teamwork will be reinforced every day."
>
> "With themes that match your company's character, from Teamwork to World of Thanks."
>
> "Sturdy key ring with spinning tab shows that your organization stands behind America. Your laser-engraved imprint goes on back of a Teamwork theme."

Aieta Decl. Exs. 4, 5 and 6.

Of course, Myron chooses to promote its products by emphasizing the message that those products communicate because Myron's customers view the message as a desirable

---

[3] Myron also does a small amount of print media advertising, but it has failed to comply with defendant's request for samples of that advertising and should not be permitted to rely on that advertising for any purpose at the preliminary injunction hearing.  Aieta Decl. at ¶ 2.

characteristic of the products.     As Myron's Vice-President of Customer Relationship
Management and Marketing explained:

> Q.  Has Myron ever asked their customers why they like this product?
> A.  They like our product for many reasons.  Some of them like -- yes, the answer to your question would be yes.  We haven't done specifically a survey on teamwork if that's what you're asking me.  We've done surveys from our customers in general, you know, people might like this because they think it's a good message and they like to keep that message, they associate with that message, and they are customers themselves to which they give the product associated with that message, so they fell that it represents their company well, for example.

Caillat Dep. Tr. at 67:12 to 68:3.

Myron has used the word TEAMWORK, the phrase "Together we achieve the extraordinary," and images of mountain climbers on various products and in various presentations since 1995.  Numerous other makers of motivational products also have used the word TEAMWORK, motivational phrases like "Together we achieve the extraordinary," and images of mountain climbers on many different products over the years.  Samples of those uses will be submitted to the Court at the hearing on September 27, 2007.  Holland, for example, produced a "Motivational Climber" pocket planner in 2003, featuring a mountain climber in silhouette with the word DETERMINATION above a motivational phrase.

In 2005 Holland decided to introduce a product to compete with Myron's pen and calendar combination product.  Holland's management had seen various Myron pen and calendar products, including Myron's Teamwork Peak products, and knew that those products were

successful in the market.  Holland's product development team had one of Myron's Teamwork Peak calendars on hand when they developed Holland's competing product.  Holland's team set out to make a better product than the Myron product.  Kirbey Decl. ¶ 3.

Holland introduced its Achieve Teamwork Pocket Planner and its United Teamwork Pocket Planner in 2007.  Kirbey Decl. ¶ 4.  The cover of the Achieve Teamwork Pocket Planner includes the word TEAMWORK above the motivational phrase "Together we can achieve the impossible."  The art work on the cover of the Achieve Teamwork Pocket Planner shows two mountain climbers scaling a mountain, one on the top of the peak and other a good distance below.  The peak and climbers are in black silhouette against a blue background of other mountain peaks.  The cover of the United Teamwork Pocket Planner includes the word TEAMWORK above the motivational phrase "Together we can achieve the impossible."  The art work on the cover of the United Teamwork Pocket Planner shows a flight of geese flying through a dark blue sky above a black horizon.  Kirbey Decl. Ex. A.

The Holland companies – Amsterdam Printing, Windmill Press and Union Pen – market the Holland products, including the Achieve Teamwork Pocket Planner, by distributing catalogs and samples to customers and prospects through the mail.  Holland begins to receive orders for its current products shortly after sending out its first mailings promoting those products.  Orders for calendar products, like the Achieve Teamwork Pocket Planner, increase beginning in August and hit their peak in September and October.  The vast majority of Holland's calendar products are shipped to customers in September, October and November.  Kirbey Decl. ¶¶ 5-6.

As is common practice in the industry, Myron and the Holland companies regularly receive mailings from their competitors.  At least six Myron employees, including upper level

Myron managers, regularly receive mailings, both catalogs and samplers, from the Holland companies.  Kirbey Decl. ¶ 7.

Holland's business records show that in January 2007 the Windmill Press 2007 Catalog was mailed to Myron's headquarters, to the attention of Larry Schaefer, who at the time was the Chief Financial Officer of Myron Corp.  Kirbey Decl. ¶ 8.  The front cover of this catalog includes a photo of a United Teamwork Pocket Planner product with the word TEAMWORK clearly legible.  *Id.*  The United Teamwork Pocket Planner is featured on page 5 of this catalog. The word TEAMWORK, and the motivational phrase "Together we can achieve the impossible." are all clearly visible.  Holland's business records show that beginning on May 11, 2007, Amsterdam's catalog was sent to customers and prospects, including P. Caillat, Plaintiff's Vice President of Customer Relations Management and Marketing, at Myron's headquarters.  An entire page of the tabloid was devoted to the United Teamwork and Achieve Teamwork calendars.  Kirbey Decl. ¶ 9.  The graphics, the word TEAMWORK, and the motivational phrase "Together we can achieve the impossible." are all clearly visible.

Holland's business records show that on June 7, 2007, Holland began mailing samples of the United Teamwork Pocket Planner products to customers, including a recipient identified on Holland's mailing list as "Probert Associates."  Kirbey Decl. ¶ 10.  Materials mailed to Probert Associates went to the home address of Mike Probert, Myron's Product Manager in charge of pocket calendars.  Mr. Probert maintains a log of the samples of competitors' products that he receives.  He noted on this log:

> Sample received (Probert Associates) of a TEAMWORK (and slogan) diary depicting "geese flying in formation" on June 16th (home) and brought to the attention of Myron senior management on 6/18/07. Sample was sent to outside counsel.

Aieta Decl. ¶ 9.   A subsequent entry in Mr. Probert's log states:

> Amsterdam WEB site was reviewed on 6/23/07.  It was found that they were selling BOTH a "mountain climber" and a "geese in formation" version of the TEAMWORK cover.

Aieta Decl. ¶  9.

Myron begins to mail its marketing materials for its 2008 calendar products to prospects in July.[4] Caillat Dep. Tr. 59:14 to 59:23.  Orders for products from prospects – therefore new customers – begin that same month.  Caillat Dep. Tr. 59:24 to 60:5.  Orders for dated products are taken from existing customers all year round, but they are not shipped until July.  Caillat Dep. Tr. 61: 5-19.

Although it indisputably learned of Holland's Achieve Teamwork Pocket Planners and United Teamwork Pocket Planners weeks before its own mass mailing of marketing materials for its competing products began (and more likely months before), Myron waited forty-three days before it filed the complaint in this action.  (Myron did not send a demand letter to Holland before filing its complaint.)  And although it clearly understood that Holland, selling similar dated products through similar direct mail channels, must have been embarking on its own promotion of its Achieve Teamwork Pocket Planners and United Teamwork Pocket Planners (in fact, according to Holland's business records, Myron employees were sent Holland marketing materials for the Achieve Teamwork Pocket Planners and United Teamwork Pocket Planners on July 2 and August 13), Myron waited another forty-one days before asking this Court for a preliminary injunction.  *See* Kirbey Decl. ¶ 11.

---

[4] The vast majority of Myron's marketing materials, by dollar value, are sent to prospects as opposed to customers.

**ARGUMENT**

In this Circuit, the "extraordinary equitable remedy" of a preliminary injunction may be granted only upon a showing of irreparable harm *and* either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor. *Bigstar Entm't, Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 191 (S.D.N.Y. 2000) (citation omitted). A preliminary injunction should not be granted unless the rights of the parties are "indisputably clear." *Brown v. Gilmore*, 533 U.S. 1301, 1303 (2001) (citations omitted).

An even higher standard applies where, as here, "the requested injunction (1) will alter, rather than maintain the status quo, or (2) will provide the movant with substantially all the relief sought, and that relief cannot be undone even if the defendant prevails at a trial on the merits." *Lexington Mgmt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 276 (S.D.N.Y. 1998) (citation omitted). Such "mandatory" injunctive relief should not issue unless the movant has made "a clear showing that [it] is entitled to the relief requested, or where extreme or very serious damage will result from denial of preliminary relief." *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995). Myron is not entitled to the extraordinary relief it seeks.

I.    MYRON    MAKES    NO    CREDIBLE    SHOWING    OF
      IRREPARABLE HARM

The irreparable harm requirement is "the single most important prerequisite for the issuance of a preliminary injunction." *Rodriguez v. DeBuouo*, 175 F.3d 227, 234 (2d Cir. 1999) (citations omitted). There is no irreparable harm in this case.

Any suggestion of irreparable harm flowing from an alleged likelihood of confusion between Myron's product configuration and Holland's product configuration is negated by Myron's delay in seeking injunctive relief.  Myron admits that it had knowledge of the alleged infringement on June 18, 2007; delay, however, is measured not by actual knowledge, but by when Myron "***knew or should have known*** about the infringement." *Total Control Apparel v. DMD Int'l Imports, LLC*, 409 F. Supp. 2d 403, 408 (S.D.N.Y. 2006); *see Chandon Champagne Corp. v. San Marino Wine Corp.,* 335 F.2d 531, 535 (2d Cir. 1964) ("a [P]laintiff may be barred when the defendants' conduct has been open and no adequate justification for ignorance is offered." )

Myron knew or should have known of Holland's allegedly infringing product in January 2007 when a catalog with one of the allegedly infringing products on its cover was sent to Larry Schaeffer, Myron's Chief Financial Officer.  *See* Caillat Dep. Tr. 67:10-13.   Mr. Schaeffer was not only one of Myron's senior executives, he was the individual identified by Myron as its contact person for ASI (Advertising Specialty Institute), the industry organization in which both Holland and Myron participate. The catalog sent to Mr. Schaeffer was followed by numerous catalogs sent to Myron employee Patrick Caillat, Vice President of Customer Relations Management and Marketing, and a sample sent to Mike Probert, Manager of pocket calendar products.  Holland's business records indicate that additional catalogs containing the Achieve Teamwork Pocket Planners and United Teamwork Pocket Planners were sent to Myron Corp. at least as early as May 11, 2007.  Yet, Plaintiff did not seek injunctive relief until the conference on September 10, more than eight months after the catalog was sent to Myron's CFO and designated ASI contact, and four months after samples and catalogs were sent to various other Myron employees and Myron Corp. itself.

The law in this Circuit is clear: when a plaintiff delays in enforcing his rights – even for a mere matter of months – the presumption that infringement alone will cause irreparable harm pending trial is neutralized. *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985) (a ten week delay after actual notice "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury"); *see also Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2d Cir. 1985) ("Lack of diligence, standing alone, may, however, preclude the granting of preliminary injunctive relief, because it goes primarily to the issue of irreparable harm rather than occasioned prejudice."); *see also Comic Strip, Inc. v. Fox Television Stations, Inc.*, 710 F. Supp. 976, 980-81 (S.D.N.Y. 1989) (three-month delay). That Myron delayed an additional six weeks after filing its complaint before informing the Court at the scheduling conference that it intended to move for preliminary relief, further belies any urgency. *See Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) (the "presumption of irreparable harm is inoperative if the plaintiff has delayed in either bringing suit *or in moving for preliminary injunctive relief*") (emphasis added) (citations omitted).

Myron admits actual knowledge of Holland's allegedly infringing product on June 18, 2007. As Myron learned of the product through a solicitation, it undoubtedly was aware that Holland was actively soliciting business for its calendars at the time. Myron acknowledges that the majority of orders for dated products occur between July and December, and "decline toward the December time frame." Caillat Dep. Tr. 60:19 to 61:4. Yet, knowing that the bulk of the promotion would take place in the summer and early fall months, Myron waited six weeks, until July 31 – after their own 2008 calendar promotions had begun – to file a complaint. Caillat Dep. Tr. 59:14-23. Even after the complaint was filed, Myron waited nearly six weeks more to

inform the Court of its intention to file a motion for a preliminary injunction. Myron's behavior "hardly evinces the tenacity with which one would expect an irreparably injured party to press its claims during its busiest season." *Nina Ricci, S.A.R.L. v. Gemcraft, Ltd.*, 612 F. Supp. 1520, 1531 (S.D.N.Y. 1985).

Myron's inexcusable delay in seeking injunctive relief establishes that it will not be irreparably injured by Holland's continuing distribution of the accused products. Therefore, the application for a preliminary injunction must be denied.

## II.    MYRON CANNOT SUCCEED ON THE MERITS OF ANY OF ITS CLAIMS

### A.    Copying Is Not Actionable If Material Copied Is Not Proprietary To Plaintiff.

Myron has no valid property rights in the design of the calendars or the alleged trademarks. "The first principal of unfair competition law is that everything that is not protected by an intellectual property right is free to copy." 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:121 at 23-364 (2006). Unlike copyright or patent law, which serve to promote innovation, the purpose of trade mark and trade dress protection is to protect the consumer. Trademark and trade dress law do not endeavor to prevent copying of products, but instead to prevent confusion as to the source of products. "[P]rovided no one is likely to be confused by the alleged infringer, there is no impairment of the interest that the trademark statute protects." *Libman Co. v. Vining Indus, Inc.*, 69 F.3d 1360, 1361 (7th Cir. 1995). As a result, similarity – even copying – is insufficient to support a claim of trade dress or trademark infringement where the similar elements do not serve primarily as identifiers of the source of goods or services. *See Knitwaves Inc. v. Lollytogs, Ltd.,* 71 F.3d 996, 1008-09 (2d Cir.

1995) (despite finding similarity sufficient to constitute copyright infringement of squirrel and leaf sweater pattern, court found no trade dress infringement, recognizing that sweater designs were primarily aesthetic.)

Even intentional copying is irrelevant under trademark law when other factors indicate that there is not a likelihood of confusion, *American Home Prods. Corp. v. Barr Labs., Inc.*, 834 F.2d 368, 371 (3d Cir. 1987), or when the facts do not show that the defendant intended to deceive consumers as to the product's source. *Versa Prods. Co. v. Bifold Co.*, 50 F.3d 189, 205-06 (3d Cir. 1995). In *Libman Co. v. Vining Indus.*, 69 F.3d 1360 (7th Cir. 1995), the Seventh Circuit found there was no evidence of an intention to confuse where defendant copied aesthetic elements of plaintiff's product in order to compete in the same market, explaining:

> So far as appears-and it is all that the record supports-Vining noticed that Libman's brooms were selling briskly, inferred that consumers like brooms with contrasting color bands, and decided to climb on the bandwagon. We call that competition, not bad faith, provided there is no intention to confuse, and, so far as appears, there was none.

*Id.* at 1363 (citation omitted); *Duraco Prods. v. Joy Plastic Enters.*, 40 F.3d 1431, 1453 (3d Cir. 1994) ("[A]ttempts to copy a product configuration [may] not be probative [because] the copier may very well be exploiting a particularly desirable feature, rather than seeking to confuse consumers as to the source of the product") (citations omitted).

### B.  Plaintiff Cannot Prevail On Its Trade Dress Claim

In order to prevail under Section 43(a), "the plaintiff must prove that (1) the mark is distinctive as to the source of the good, and (2) that there is a likelihood of confusion between its good and the defendant's." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115 (2d Cir. 2001).

For trade dress cases based on product design, such as this, plaintiffs must show that the design at issue has acquired secondary meaning, "which occurs when, 'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.'" *Walmart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 211 (2000), *quoting Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 851, n.11 (1982).  Finally, as it is undisputed that Myron's trade dress is not registered on the principal register with the United States Patent and Trademark Office, Myron has the additional burden of proving that the elements of the claimed trade dress are not functional.  15 U.S.C. § 1125(a)(3).

> 1.     *The primary significance of Myron's Teamwork Peak Theme is aesthetic and is not to designate source*

In this circuit, a court faced with a claim of trade dress infringement based on product configuration must first determine whether or not the claimed design elements can be protected as a trademark; "we ask whether [plaintiff's design] is 'likely to serve primarily as a designator of origin of the product.'"  *Knitwaves,* 71 F.3d at 1008 (internal quotation omitted).  Myron's Teamwork Peak theme serves primarily to add to the aesthetic appeal of Myron's calendars.  The primary significance of the theme is not to designate Myron as the source of the product.  As the United States Supreme Court explained in *Walmart Stores v. Samara Bros.*, 529 U.S. 205, 213 (2000):

> In the case of product design…we think consumer predisposition to equate the feature with the source does not exist.  Consumers are aware of the reality that, almost invariably, even the most unusual of product designs – such as a cocktail shaker shaped like a penguin – is intended not to identify the source, but to render the product itself more useful or appealing.

The design of a product may be protectable as trade dress only when "a buyer will immediately rely on it to differentiate the product from those of competing manufacturers." *Tone Bros., Inc. v. Sysco Corp.*, 28 F.3d 1192, 1206 (Fed. Cir. 1994). Clearly, that is not the case with Myron's Teamwork Peak theme. Myron's theme may be appealing to buyers of corporate promotional products – for its appearance, for the practicality of the pen and calendar combination, or for the relevance of the motivational message it contains – but there is absolutely no evidence to suggest that consumers "immediately rely" on the design elements of the theme to differentiate Myron's calendars from those of other pocket calendar makers. *See also Yurman*, 262 F.3d at 116 ("Product design is driven primarily by the usefulness or aesthetic appeal of the object; trade dress protection for product design therefore entails a greater risk of impinging on ideas as compared with protection of packaging or labeling.").

In *Knitwaves Inc. v. Lollytogs, Ltd.,* 71 F.3d 996 (2d Cir. 1995), the Second Circuit rejected plaintiff's claim that a sweater design consisting of stripes and appliquéd leaves and a squirrel could be protected as trade dress. The court noted: "As Knitwaves' objective in the two sweater designs was primarily aesthetic, the designs were not primarily intended as source identification. Those sweater designs therefore fail to qualify for protection of trade dress inherent in product design." 71 F.3d at 1009. Here, Myron's own marketing of the Teamwork Peak theme--"your commitment to teamwork will be reinforced every day"--demonstrates that the objective of the theme is to provide Myron's customers with products that communicate a desired message or present a desired corporate identity. Aieta Decl. Ex. B. Myron never promotes its Teamwork Peak theme as source identifying. Myron's own consumer studies indicate that consumers view the elements of its motivational products as part of the message

that they wish to convey to their own customers; "they think it's a good message." They do not think it is an indication of source.

Because Myron's Teamwork Peak theme does not serve primarily as a designator of the origin of Myron's calendars, Myron cannot assert trade dress rights in that theme.

### 2. There is No Likelihood of Confusion

Even if the court were to find that the Teamwork Peak theme could be source identifying, there is still no likelihood that the relevant consumers are likely to be confused. Myron's alleged trade dress is simply not distinctive. The market for motivational products is crowded with very similar products. For example, none of the four posters pictured below are manufactured by Myron or Holland.[5] Aieta Decl. Ex. E.



Like the "trade dress" articulated by Myron in its Complaint, all four posters feature the word teamwork "in large capital letters with a noticeable space between each letter rendering prominence to the mark," followed by a motivational message in "a smaller font in sentence case." Complaint ¶ 21. Similarly, the "background artwork [of the posters] depicts two silhouetted mountain climbers … (b) one higher than the other; (c) facing each other, with the

---

[5] Plaintiff's original trademark registration included "posters."

climber in the higher position assisting the other climber; (d) standing on a silhouetted peak in the foreground…"  *See Id.*    The "total look and feel" of these designs is without question similar.  Although these are not dated products, they are clearly aimed at the same audience as Myron's Teamwork Peak products and must be taken into consideration when evaluating the strength of Myron's claimed trade dress.

Myron's claim of likelihood of confusion completely ignores the context in which buyers of the Myron and Holland products encounter those products.  Each sample product mailed by Myron or by Holland to a prospect or existing customer is mailed with a cover letter prominently identifying the source of the product.  Aieta Decl. Ex B.   A customer must place a minimum order for at least 50 calendars, resulting in a minimum purchase price of $150.  Kirbey Decl. ¶ 2. Consequently, these are not spontaneous or spur of the moment purchasing decisions.  The products being purchased will be printed with the buyer's name and distributed by the buyer to his own customers and employees, which certainly means that the buyer will be devoting extra care to the purchase to assure that the product purchased will cast a positive light on his own business.  Catalogs mailed to customers or prospects clearly and boldly identify Myron or one of the Holland companies as the source of the products in the catalog.  There is simply no serious possibility that a buyer will be confused as to the source of the product he is purchasing.

### C. Plaintiff Cannot Prevail On Its Claims Based on the Phrase "Together We Achieve The Extraordinary"

Myron does not use the phrase "Together we achieve the extraordinary" as a trademark. The words are not used as source identifiers, but rather are decorative, ornamental features of the product.  *Damn I'm Good, Inc. v. Sakowitz, Inc.*, 514 F. Supp. 1357 (S.D.N.Y. 1981) (despite

USPTO allowance of the application for DAMN I'M GOOD, inscription of phrase on metal bracelets minimally source identifying and primarily aesthetic); *see also In re Olin Corp.*, 181 USPQ 182 (T.T.A.B. 1973) ("It is a matter of common knowledge that T-shirts are 'ornamented' with various insignia, including college insignias, or 'ornamented' with various sayings such as 'Swallow Your Leader...' 'Swallow Your Leader' probably would not be considered as an indication of source").[6]

In *Damn I'm Good,* 514 F. Supp. 1357 (S.D.N.Y. 1981), the court refused to extend protection to the slogan "Damn I'm Good" on bracelets, finding the use was primarily aesthetic, and was a "crucial ingredient in the commercial success of plaintiff's product, independent of any source-identifying function it might serve." 514 F. Supp. at 1362. As Myron's Vice President of Customer Relations Management and Marketing explained, he believes Myron's calendars are popular because customers "think it's a good message." Caillat Dep. Tr. 67:14 to 68:3.

Myron's application for "Together we achieve the extraordinary" was initially rejected by the United States Patent and Trademark Office on these very grounds. Aieta Decl. Ex. J. In response to the examiner's concerns, Myron made the representation that "Together we achieve the extraordinary" it is "not a slogan that has been used by others" and explained that <u>Bartlett's Familiar Quotations</u> (15th Edition 1980) does not disclose "this slogan or a confusingly similar one." That the phrase "Together we achieve the extraordinary" is not "used by others" is certainly false today and likely was false at the time that the representation was made to the USPTO. A google search for the phrase yields about 591 hits, including the following uses:

---

[6] The Second Circuit has "noted on many occasions that the decisions of the TTAB, while not binding on courts within this Circuit, are nonetheless 'to be accorded great weight." See *Buti v. Impressa Perosa, S.R.L.*, 139 F.3d 98, 105 (2d Cir. 1998) (citations omitted).

- *The Coharie Tribes.* "THE COHARIE TRIBES MOTTO: 'Teamwork' together we achieve the extraordinary, separate we achieve very little"

- *Rick's Lawn and Garden Service.* "Teamwork! Together we achieve the extraordinary!"

- *MIT Dean's Annual Breakfast -* "Teamwork: Together we achieve the extraordinary"

- *Construction and Abatement Services, Inc.* "Our Mission TEAMWORK Together we achieve the extraordinary"

- *Inauguration of UCSD Dean.* "The theme for the inauguration is *Together We Achieve the Extraordinary*, reflecting the spirit and energy of UCSD and the campus tradition of teamwork."

*See* Aieta Decl. ¶ 11, Exs. H and I.

In support of its argument that the phrase is perceived as a mark by consumers, Myron represented to the examiner that the phrase always appears with the TM symbol. Myron's current product does not appear either with TM or ®. Aieta Decl. Ex. K. If Myron's argument was valid then, it's antithesis is valid now: the absence of any indication that the phrase is a mark means that millions of consumers are given the impression, by Myron, that the phrase is not a mark. This conclusion is supported by the fact that Myron certainly knows how to use trademark designators when it wants to; Myron's current Teamwork Peak products feature the mark POCKET PAL® prominently on the first page of the pocket calendar. Aieta Decl. ¶ 8, Ex. G.

In light of the widespread use of the phrase and Myron's failure to use the phrase in anything other than an aesthetic manner, the mark Together We Achieve the Extraordinary lacks all source identifying capability, has become generic, and is invalid and subject to cancellation. *See* 15 U.S.C. § 1064 ("A petition to cancel a registration of a mark…may…be filed…At any

time if the registered mark become the generic name for the goods or services, or a portion thereof, for which is it registered.").

Even if the court finds that the phrase TOGETHER WE ACHIEVE THE EXTRAORDINARY is used by Myron as a trademark, Holland's use of the phrase "Together we achieve the impossible" is, in context, not likely to cause confusion. "When the primary term is weakly protected to begin with, minor alterations may effectively negate any confusing similarity between the two marks." *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 101 F.3d 645, 655 (10th Cir. 1996). Under the circumstances, Myron's registered mark TOGETHER WE ACHIEVE THE EXTRAORDINARY is sufficiently different from Holland's phrase "Together we can achieve the impossible." Myron implicitly recognized this when it represented to the USPTO that that there were no "confusingly similar marks" in *Bartlett's Familiar Quotations*, which contains the phrase "Together we shall achieve victory." *See Bartlett's Familiar Quotations,* pg. 815 (15th Ed.). "Together we shall achieve victory" is at least as similar to Myron's registered mark as "Together we can achieve the impossible." Therefore, Myron has conceded that the phrase used by Holland is not confusingly similar to Myron's registered mark.

The strength of a mark is a key issue for the court to consider, even in the case of incontestable registrations. *Cullman Ventures, Inc. v. Columbian Art Works, Inc*., 717 F. Supp. 96 (S.D.N.Y. 1989) ("[T]he Court certainly did not mean to prevent an accused infringer from questioning the *strength* of the mark. . . . Incontestable status does not make a weak mark strong." (internal quotations and citations omitted)). Even uses of the phrase that are clearly non-trademark, like the theme of the UCSD dean's inauguration, *see supra* pg. 18, serve to weaken Myron's rights. *See Moose Creek, Inc. v. Abercrombie & Fitch Co.,* 331 F. Supp. 2d 1214, 1224-25 (C.D. Cal. 2004), *aff'd*, 114 Fed. Appx. 921 (9th Cir. 2004) (consumers unlikely to

associate defendant's clothing with plaintiff's given extensive third-party use of moose, both in the trademark and the ornamental capacity). Given the pervasive use of Myron's phrase and very similar phrases in the motivational context, consumers either do not view those phrases as source designators or, if they do, are accustomed to distinguishing between similar phrases. In either case, Holland's motivational phrase is not likely to cause confusion with Myron's weak mark.

### D. Plaintiff Cannot Prevail On Its Common Law Trademark Claim Based on the Word TEAMWORK

To establish protectability under § 43(a) for its unregistered TEAMWORK mark, Myron must demonstrate that its TEAMWORK mark has acquired secondary meaning. *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 115 (2d Cir. 2006). Myron cannot possibly meet its burden of establishing that the word "TEAMWORK" serves as a source identifier for one provider of business promotional products, or even of dated products. The word "Teamwork" is extremely common on business promotions, and particularly on dated products. . A cursory review of the web yields numerous calendars entirely dedicated to "Teamwork" or featuring "Teamwork" as a theme for a particular month. *See* Aieta Decl. at ¶ 8. Plaintiff's assertion that it has common law trademark rights in the word TEAMWORK in connection with calendar products is simply specious.

### III. A PRELIMINARY INJUNCTION WILL CAUSE DEFENDANT TO SUFFER SEVERE HARDSHIP

To prevail on its request for an injunction, Myron must demonstrate a "balance of hardships decidedly in favor of the movant." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 376 (2d Cir. 1997) (citation omitted). The harm to Holland has been exacerbated

by Myron's delay in seeking injunctive relief, and without question, it is Holland who will suffer the greater harm should the injunction issue. While Myron waited eight months to take action to protect what it now claims is a trade dress with "inestimable value," Holland promoted its Achieve Teamwork Pocket Planners and United Teamwork Pocket Planners to its customers, took orders for those products, and filled or is about to fill orders for those products. For weeks after it knew that Holland was promoting its Achieve Teamwork Pocket Planners and United Teamwork Pocket Planners and with full knowledge of the seasonal nature of those products, Myron still did not act. Only now, when Holland has completed the majority of its promotional activities for the accused products, Myron moves for relief – at the time when Holland's orders are coming in and must be filled. Myron, therefore, has guaranteed that any injunction issued at in this case will create as much harm as possible for Holland, wasting promotional resources and alienating customers that already have ordered the Holland products.

CONCLUSION

For all of the foregoing reasons, Myron's motion for a preliminary injunction should be denied.

Dated: September 24, 2007

Respectfully submitted,

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By:_____
        Mario Aieta
        Betsy C. Judelson
866 United Nations Plaza
Tel: (212) 813-5900
Fax: (212) 813-5901

Attorneys for Defendant