UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------x
                                          :
MYRON CORP.,                              :
            Plaintiff                     :   Case No. 07-CV-6877 (PAC)
         v.                               :
                                          :
HOLLAND USA, INC D/B/A AMSTERDAM          :
PRINTING,                                 :
            Defendants.                   :
                                          :
-------------------------------------------------------------x
```

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO PLAINTIFF'S REQUEST FOR A PRELIMINARY INJUNCTION**

Mario Aieta (MA 2228)
Betsy C. Judelson (BJ 1107)
Fross Zelnick Lehrman & Zissu, P.C.
866 United Nations Plaza
New York, New York 10017
Tel.: (212) 813-5900
Fax: (212) 813-5901
Attorneys for Defendant
Holland USA d/b/a/ Amsterdam Printing

{F0110751.1 }

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

    I.    MYRON HAS INEXCUSABLY DELAYED ITS REQUEST FOR A PRELIMINARY INJUNCTION IN ORDER TO CAUSE THE MAXIMUM HARM TO HOLLAND ............................................................................................. 2

    II.    MYRON'S ALLEGED TRADE DRESS DOES NOT SERVE AS A SOURCE INDICATOR ........................................................................................... 4

    III.    MYRON CANNOT SHOW THAT ITS TEAMWORK PEAK THEME HAS ACQUIRED SECONDARY MEANING ............................................................ 6

    IV.    SIMILARITIES BETWEEN HOLLAND'S PRODUCT DESIGN AND MYRON'S PRODUCT DESIGN ARE NOT PROBATIVE OF ANY ISSUE RELEVANT TO MYRON'S CHANCES OF SUCCESS ON THE MERITS OF ITS CLAIMS ................................................................................................. 7

    V.    THE BALANCE OF THE HARDSHIPS TIPS DECIDEDLY IN FAVOR OF HOLLAND ............................................................................................................ 8

CONCLUSION ......................................................................................................................... 9

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976) ...................... 4

*Duraco Products v. Joy Plastic Enterprises,* 40 F.3d 1431 (3d Cir. 1994) .......................... 6

*Gemmy Industries Corporation v. Chrisha Creations Limited*, 2004 U.S. Dist. LEXIS 11468 (S.D.N.Y. 2004) ................................................................................ 8

*Knitwaves Inc. v. Lollytogs, Ltd.*, 71 F.3d 996 (2d Cir. 1995) ............................................. 4

*PAF S.r.l. v. Lisa Lighting Co., Ltd.*, 712 F. Supp. 394 (S.D.N.Y. 1989) ............................. 6

*Versa Products Company, Inc. v. Bifold Company (Manufacturing) Ltd.*, 50 F.3d 189 (3rd Cir. 1995) ................................................................................................ 8

*Walmart Stores, Inc. v. Samara Brothers*, 529 U.S. 205 (2000) .................................. 4, 5, 7

### FEDERAL STATUTES

19 U.S.C. § 1927 ................................................................................................................ 1

**PRELIMINARY STATEMENT**

Defendant Holland USA, Inc. d/b/a Amsterdam Printing ("Holland"), respectfully submits this reply memorandum of law in further opposition to Plaintiff Myron Corp.'s ("Myron") request for a preliminary injunction.

In a continuation of its effort to make this litigation as needlessly expensive as possible to Holland, Myron revealed, for the first time, its intention to seek relief only as to the alleged mountain climber trade dress in a footnote to its brief in support of its preliminary injunction. *See* Plaintiff's Memorandum of Law In Support of Its Motion for Preliminary Injunction ("Pl. Mem) at 1, n.1. Myron did not so limit its preliminary injunction request when it first articulated that request at the preliminary conference with the Court on September 10. And, in spite of the fact that counsel for Myron and counsel for Holland have communicated with regard to this motion on every single business day since September 10, often face to face, Myron's counsel never mentioned that it intended to give up on its preliminary injunction motion with respect to the word TEAMWORK, the registered mark TOGETHER WE ACHIEVE THE EXTRAORDINARY, of Holland's United Teamwork Pocket Planner. Consequently, Holland's counsel has spent precious time and incurred legal fees preparing an opposition to preliminary injunction claims that Myron had no intention of pursuing. Myron should be sanctioned pursuant to 19 U.S.C. § 1927 for its inexplicable failure to advise counsel for Holland that it intended to limit its preliminary injunction motion to its alleged trade dress.

Myron's abandonment of its claims based on its alleged common law mark TEAMWORK, the registered mark TOGETHER WE ACHIEVE THE EXTRAORDINARY, and Holland's United Teamwork Pocket Planner not only demonstrates Myron's bad faith in pursuing this untimely motion, but also the utter lack of merit to Myron's preliminary injunction

{F0110751.1 }

motion overall. Myron's claimed common law mark and registered trademark appear on far more Myron products than the alleged trade dress. Therefore, Myron's decision to drop its common law and registered trademark claims as well as its opposition to Holland's United Teamwork Planner must be based on Myron's implicit concession that it is not likely to succeed on claims for infringement based on those marks. In other words, Myron concedes that consumers are not likely to be confused by the presence of the word TEAMWORK or the use of the phrase TOGETHER WE CAN ACHIEVE THE IMPOSSIBLE on Holland's products. Moreover, by dropping its request for preliminary relief with respect to Holland's United Teamwork Planner, which Myron still claims in its moving papers is "identical in form and presentation" to Myron's products (Pl. Mem. at 4), Myron eviscerates its claim that it will be irreparably harmed by the continued sale of Holland's Achieve Teamwork Planner. Sale by a competitor of products that Myron contends are "identical in form and presentation" to Myron's products does not cause any cognizable trademark harm to Myron because that "form and presentation" does not serve as a source indicator.[1]

I.  MYRON HAS INEXCUSABLY DELAYED ITS REQUEST FOR A PRELIMINARY INJUNCTION IN ORDER TO CAUSE THE MAXIMUM HARM TO HOLLAND.

Although the issue of Myron's unwarranted delay in making its request for a preliminary injunction hearing was discussed at the preliminary conference at which Myron first made its request, in its moving brief Myron does not cite or discuss a single case justifying its failure to act promptly. Presumably Myron is withholding its legal arguments until its reply brief so as to

---

[1] Myron asserts in its moving brief that "since the filing of the complaint" it "has learned" that Holland also does business under the name Union Pen and that Holland is affiliated with Windmill Press. Myron "has learned" of Union Pen and Windmill Press because Holland's counsel brought those entities to the attention of Myron's counsel and has offered to accept service of an amended complaint on behalf of those entities.

deprive Holland of an opportunity to refute its arguments in writing. A few sentences in its moving papers are, nonetheless, relevant to the issue delay and further demonstrate that Myron's request for a preliminary injunction should be denied.

Patrick Caillat, Myron's Vice President of Customer Relationship Management and Marketing, states that calendars "are dated products with a finite end to their usefulness." Caillat Declaration ¶ 7. Mr. Caillat also declares that Myron's "peak selling season is coming to a close." Caillat Declaration ¶ 20. On the date when Myron claims to have first learned of the accused Holland products, Myron's selling season had not yet started. Caillat Dep. Tr. 59:14 to 59:23. That Myron, learning of its competitor's products before its selling season began, should wait to bring this preliminary injunction motion until its selling season is "coming to a close," is completely inexplicable if, in fact, the sale of Holland's products would cause irreparable harm to Myron.

In its brief Myron cites to the deposition of Holland's president, Kevin Kirbey, for the proposition that Holland's selling season "spans the entire year." Plaintiff's Moving Brief at 23. In fact, Holland's president testified as follows:

> Q. You were asked about the selling season for these products. You indicated it starts January 1 and ends December 31.
> A. Yes.
> Q. Is there a period of time during the year when more of the products are sold, that is to say when more orders are taken?
> A. Typically second week of September through December, first week in December.

Reply Declaration of Mario Aieta Ex. A. Obviously, rather than take action before the beginning of its own selling season, when it logically might have been expected to act to protect its own interest, Myron waited until the height of Holland's selling season, when the vast majority of Holland's solicitations already have been distributed, in order to inflict the maximum harm and inconvenience on Holland.

## II. MYRON'S ALLEGED TRADE DRESS DOES NOT SERVE AS A SOURCE INDICATOR

Myron argues that its claimed trade dress is entitled to protection because it is inherently distinctive. Pl. Mem. at 10 (asserting secondary meaning as an "alternative" basis for protection). Because Myron's claimed trade dress is the design of the Myron product itself, and not the packaging of that product, Myron's trade dress claim requires proof of secondary meaning; product configuration cannot be inherently distinctive. *Walmart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 211 (2000).

Throughout its moving brief Myron muddles the distinction between trade dress in product packaging and trade dress in product design. *See* Plaintiff's Moving Brief at 9, citing *Paddington Corp. v. Attiki* for the proposition that courts "routinely grant trade dress protection to similar product layouts;" *Paddington* involved product packaging (the bottle in which Greek ouzo was sold), not product layout. In fact, the Second Circuit has stated that *Paddington* and *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976), both relied on by Myron, are not appropriate guidance for cases concerning product design. In *Knitwaves Inc. v. Lollytogs, Ltd.,* 71 F.3d 996, 1007 (2d Cir. 1995), the court explained:

> We do not find the analysis of *Paddington* appropriate in the case before us, in which the trade dress at issue consists of a product's features -- the artwork on a sweater -- rather than, as in *Paddington*, a product's packaging. Not only does the classification of marks into 'generic,' 'descriptive,' 'suggestive,' or 'arbitrary or fanciful' make little sense when applied to product features, but it would have the unwelcome, and likely unintended, result of treating a class of product features as 'inherently distinctive,' and thus eligible for trade dress protection, ***even though they were never intended to serve a source-identifying function***.

(emphasis added).

Of course, Myron relies on *Paddington* and ignores *Knitwaves* because it is seeking to benefit from precisely the "unwelcome result" against which *Knitwaves* warns. By focusing on the supposedly "distinctive" combination of a number of admittedly common elements in its Teamwork Peak theme, Myron seeks to obtain protection for design elements that "***were never intended to serve a source-identifying function***." By so doing Myron seeks to avoid the principal that must guide every aspect of the evaluation of Myron's claim: "consumer predisposition to equate the feature with the source does not exist. Consumers are aware of the reality that, almost invariably, even the most unusual of product designs. . . is intended not to identify the source, but to render the product itself more useful or appealing." *Walmart Stores v. Samara Bros.*, 529 at 213. In its moving brief Myron fails to point to a single fact suggesting that its Teamwork Peak theme serves as an indicator of source.

Numerous facts demonstrate that Myron's Teamwork Peak theme is not a source indicator. As referenced in Holland's opening brief in opposition, Myron promotes the theme because it is a message that its customers want to associate with their own businesses. Holland has every right to create and market products that give its customers the ability to deliver the exact same message to their business contacts. "[E]xploiting the 'goodwill of the article,' *Kellogg Co.* [*v. National Biscuit Co.*], 305 U.S. [111], 121, 59 S. Ct. at 115 -- the attractive

features, of whatever nature, that the product holds for consumers -- is robust competition; only deceiving consumers, or exploiting the good will of another producer, is unfair competition." *Duraco Products v. Joy Plastic Enterprises,* 40 F.3d 1431, 1445 (3d Cir. 1994).

### III. MYRON CANNOT SHOW THAT ITS TEAMWORK PEAK THEME HAS ACQUIRED SECONDARY MEANING

As one case cited by Myron notes, "proof of secondary meaning entails vigorous evidentiary requirements." *PAF S.r.l. v. Lisa Lighting Co., Ltd.,* 712 F. Supp. 394, 403 (S.D.N.Y. 1989) (internal quotations and omitted). In *PAF*, plaintiff established that the design of its lamp had acquired secondary meaning by presenting evidence of huge commercial success (the second best selling lamp in the country), dramatic sales growth, advertising expenditures directly related to promoting the design of the product in connection with plaintiff's name in design magazines directed at people who would be recommending the product to others (architects, interior designers, etc.), catalogs that depicted the design as "the symbol of [plaintiff]," "free advertising" by third parties, and extensive unsolicited media coverage. *Id.* at 402-408. Myron cannot muster any similar evidence in support of its trade dress claim.

The only evidence proffered by Myron in support of its contention that the Teamwork Peak theme has acquired secondary meaning is its repeated references to the amount of money that it has spent on mailing samples of that product to customers and prospects. Sums spent on Myron's sample mailings, however, are in no way probative of the alleged secondary meaning of its claimed trade dress. Each sample mailing is accompanied by a letter from Myron to the customer or prospect. Those letters **never** suggest that the claimed trade dress is a source indicator. One reviews Myron's letters in vain for some statement encouraging the customer or

prospect to "look for the mountain climbers" or suggesting "when you see Teamwork Peak, you know you are getting Myron quality!" Consequently, the amount of money spent by Myron to send samples of products to prospects and customers has no relevance at all to the issue of secondary meaning because it did not involve any effort to promote the Myron desire as a source identifier. *See Milbank Tweed Hadley & McCloy LLP v Milbank Holding Corp.,* CV 06-187-RGK (C.D. Cal. February 23, 2007)(attached hereto at Appendix A)(advertising expenditures were not evidence of secondary meaning where plaintiff failed to show expenditures applied to advertising of the specific mark at issue, rather than the full name of the plaintiff).

IV. **SIMILARITIES BETWEEN HOLLAND'S PRODUCT DESIGN AND MYRON'S PRODUCT DESIGN ARE NOT PROBATIVE OF ANY ISSUE RELEVANT TO MYRON'S CHANCES OF SUCCESS ON THE MERITS OF ITS CLAIMS**

Myron frequently refers to the similarities between the design of its Teamwork Peak theme and the design of Holland's Achieve Teamwork Planner. Myron asserts that these similarities evidence bad faith and an intent to cause confusion. In support of this, however, Myron relies primarily on cases involving product packaging or other traditional trademarks (e.g., baseball team insignia). Competition by copying a successful design that is not protected by copyright or patent ordinarily does not give rise to a trademark cause of action because "Consumers are aware of the reality that, almost invariably, even the most unusual of product designs. . . is intended not to identify the source, but to render the product itself more useful or appealing." *Walmart Stores v. Samara Bros.*, 529 U.S. at 213. Because consumers do not look to the design as a designator of source, similar designs do not cause confusion as to source.

Furthermore, Myron's products and Holland's product are promoted in contexts where each is surrounded by clear indicators of the source of the product – either in catalogs or accompanied promotional cover letters clearly indicating where the product came from.

> In a product configuration trade dress infringement case. . .consumers do not have to rely on a potentially distinctive configuration to identify the source of the product; rather, they can generally look to the packaging, trademarks, and advertising used to market the product, which are typically much less ambiguous. Consumers therefore have less need, and so are much less likely, to rely on a product configuration as an indicator of the product's source. Accordingly, they are less likely to be confused as to the sources of two products with substantially similar configurations. Thus, in trade dress infringement suits where the dress inheres in a product configuration, the primary factors to be considered in assessing likelihood of confusion are the product's labeling, packaging, and advertisements.

*Versa Products Company, Inc. v. Bifold Company (Manufacturing) Ltd.*, 50 F.3d 189, 202-03 (3rd Cir. 1995); *see Gemmy Industries Corporation v. Chrisha Creations Limited*, 2004 U.S. Dist. LEXIS 11468 (S.D.N.Y. 2004) ("As a matter of law, there can be no likelihood of confusion as to the source of origin of the product when the product's brand name is prominently displayed on the packaging for the product.") Consequently, similarities between the appearance of the products and evidence of "copying" is simply not probative of likelihood of confusion since Holland very clearly markets its products to the world as its own; there is no intent to cause confusion.

V.   THE BALANCE OF THE HARDSHIPS TIPS DECIDEDLY IN FAVOR OF HOLLAND

Myron argues that it will be irreparably harmed by Holland's sale of its Achieve Teamwork Planners because customers for pocket calendars tend to reorder. The greatest difficulty with this argument is, of course, the fact that Myron had the option of bringing this

motion before the court at a time when very few potential customers had received Holland's promotions. It did not do so. Instead, Myron waited until Holland had completed most of its promotional efforts (for a product that Myron claims is identical to its own) and now seeks to stop Holland from reaping the benefit of those efforts.

## CONCLUSION

For all of the foregoing reasons, Myron's motion for a preliminary injunction should be denied.

Dated: September 26, 2007

                                          Respectfully submitted,

                                          FROSS ZELNICK LEHRMAN & ZISSU, P.C.

                                          By: _____
                                                Mario Aieta
                                                Betsy C. Judelson
                                        866 United Nations Plaza
                                        Tel: (212) 813-5900
                                        Fax: (212) 813-5901

                                        Attorneys for Defendant