Case 2:06-cv-00187-RGK-JTL Document 139 Filed 02/23/2007 Page 1 of 9
Case 3:07-cv-06877-PAC Document 14-2 Filed 09/26/2007 Page 1 of 9

P-SEND, ENTER, JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-187-RGK (JTLx) | Date | February 23, 2007 |
|---|---|---|---|
| Title | MILBANK TWEED HADLEY & McCLOY LLP v. MILBANK HOLDING CORP., d/b/a MILBANK REAL ESTATE SERVICES | | |

Present: The Honorable R. GARY KLAUSNER, U.S. DISTRICT JUDGE

| Sharon L. Williams | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants:

Not Present  Not Present

**Proceedings:** **(IN CHAMBERS) DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 58)**

**I.    INTRODUCTION**

On July 3, 2006, Plaintiff, Milbank Tweed Hadley & McCloy, LLP ("MT") filed suit against Defendant, Milbank Holding Corp., d/b/a Milbank Real Estate Services, Inc. ("MRE"). Plaintiff brings the following causes of action: (1) federal trademark dilution; (2) federal unfair competition, false designation of origin, and false description; (3) federal cyberpiracy; (4) California unfair competition; and (5) California trademark dilution.

Plaintiff prays for the following relief: preliminary and permanent injunctions against continued use of the infringing mark and colorable imitations, as well as the domain name "www.milbank.us"; destruction of all materials incorporating the infringing mark; compensatory damages of all profits from use of the infringing marks and website; recovery of Plaintiff's damages resulting from unfair competition and trademark infringement; statutory triple damages; attorney fees; punitive damages; costs; and other proper relief.

Presently before the Court is Defendant's Motion for Summary Judgment. For the reasons stated below, the Court **grants** Defendant's Motion.

**II.   FACTUAL BACKGROUND**

The following facts are alleged by the parties.

Plaintiff MT is a reputable and historied New York based law firm. Defendant MRE is a real estate company doing business in Los Angeles.

MT traces its history to 1866. MT has many practice areas including real estate law. MT has a history of assisting in real estate transactions in major US cities. In 1994, MT decided to brand itself as simply "Milbank." MT updated its website to conform to this new branding effort.

MRE's principals have a nearly thirty-year history in the Los Angeles real estate market. In late 2001, the real estate company that was to become MRE hired a branding firm to help pick a new name for the company. The company decided on Milbank Real Estate Services, Inc. In 2002, MRE registered the domain name "milbank.us" and later registered "milbankre.com." MRE provides development, management, leasing, and brokering real estate services.

"Milbank" is the mark at issue. MT claims the mark as its own and objects to MRE's use of the mark.

### III. JUDICIAL STANDARD

Under the Federal Rules of Civil Procedure, summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Upon such showing, the Court may grant summary judgment "upon all or any part thereof." Fed. R. Civ. P. 56(a), (b).

To prevail on a summary judgment motion, the moving party must show there are no triable issues of material fact as to a matter upon which it has the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). On issues where the moving party does not have the burden of proof at trial, the moving party is required only to show that there is an absence of evidence to support the non-moving party's case. *See id.* at 326.

To defeat a summary judgment, the non-moving party may not merely rely upon its pleadings or on conclusory statements. Fed. R. Civ. P. 56(e). Nor may the non-moving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). The non-moving party must affirmatively present specific admissible evidence sufficient to create a genuine issue of material fact for trial. *See Celotex Corp.*, 477 U.S. at 324.

### IV. DISCUSSION

#### A. Trademark Infringement / Unfair Competition

MT's First Amended Complaint ("FAC") alleges claims for federal and state unfair competition.[1] The standard "for Lanham Act unfair competition is the same as that for Lanham Act trademark infringement" and "the elements of state claims for trademark infringement and unfair competition are substantially similar to those of the comparable federal claims." *Echo Drain v. Newsted*, 307 F. Supp. 2d 1116, 1121 (C.D. Cal. 2003) (quoting *Glow Industries, Inc. v. Lopez*, 252 F. Supp. 2d 962, 975 n.90 (C.D. Cal. 2002)). To prevail on its federal trademark infringement claims, MT must show (1) that it has a valid protected interest (or trademark right) in "Milbank"; and (2) that Defendant's use of the same or similar mark are likely to cause confusion in the minds of the relevant consuming public. *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th Cir. 1987).

---

[1] MT's second cause of action is brought under the section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). MT's fourth cause of action is brought under Cal. Bus. & Prof. Code § 17200 *et seq.*

1. *MT Does Not Have a Protected Interest in the Mark*

MRE claims that summary judgment is proper on MT's unfair competition claims because MT has failed to demonstrate that "Milbank" is a protected mark.[2] The Court agrees.

A valid federal trademark registration constitutes *prima facie* evidence that the holder owns the mark and has the exclusive right to use the mark in connection with the goods and services specified in the registration. 15 U.S.C. § 1115(a); *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 328 F.3d 1061, 1069 (9th Cir. 2003). It is undisputed that MT has not registered a federal trademark in "Milbank." (Opp. at 10:24). Accordingly, to prove that it has a protected interest in "Milbank," MT must establish that the mark has acquired secondary meaning during the relevant time period.[3] *See Kendall-Jackson Winery, Ltd. v. E & J Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998).

"In this circuit, secondary meaning has been defined as association, nothing more." *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985) (citations and quotations omitted). "The basic element of secondary meaning is, thus, the mental association by a substantial segment of consumers and potential consumers between the alleged mark and a single source of the product." *Id.* (citations and quotations omitted). Secondary meaning can be established through direct evidence, such as testimony by consumers or surveys, or indirect evidence, such as by established place in the market, amount and manner of advertising, and amount of sales and number of customers. *Echo Travel, Inc. v. Travel Assocs., Inc.*, 870 F.2d 1264, 1267 (7th Cir. 1989); *see Levi Strauss & Co.*, 778 F.2d at 1358. Here, MT's evidence of secondary meaning is so meager as to be *de minimus*. MT's evidence is as follows.

MT claims that it generated "millions" in fees derived from attorneys who practice in its real estate practice between 1999 and 2006. (FF 276). This evidence is not helpful since the relevant period is between 1999 and 2002. Also, Milbank does not specify whether "millions" means 2 million or 200 million. Additionally, even taken in its best light, the evidence does little or nothing to establish that general consumers of real estate services would associate the name "Milbank" with MT.

MT's evidence of advertising is also remarkably scant. MT provides evidence that it spent $2.3 million in 2002 on advertising. (FF 275). However, this number is misleading. MT admits that only $34 thousand of those advertising dollars are "traceable" to its real estate practice. (FF 275). More to the point, however, is MT's omission of whether *any* of MT's advertising dollars were spent advertising "Milbank" as opposed to advertising the firm using its full name. Accordingly, MT has failed to offer any evidence of dollars spent exclusively promoting the name "Milbank."

MT sets forth evidence that it was ranked the 9th most profitable law firm in the American Lawyer annual ranking of U.S. law firms. MT does not provide the Court with details of this distinction. The Court has no way of knowing whether those ranking referred to the firm by its full name or simply by "Milbank." Accordingly, the Court can grant no weight to this already lean piece of evidence of

---

[2] MRE also claims that MT has failed to establish the second prong needed for an unfair competition claim, i.e., that defendant's use of the same or similar mark are likely to cause confusion in the minds of the relevant consuming public. Since the Court finds that MT has not established secondary meaning, it does not reach this issue.

[3] MT claims that it began branding itself as simply "Milbank" in 1999. MRE's use of "Milbank" began in 2002. Accordingly, neither party disputes that MT must demonstrate secondary meaning prior to MRE's first use of "Milbank" in 2002.

secondary meaning.

Finally, MT claims that its website milbank.com had 1.3 million "hits" during a month in 2002. First, the Court must note that "hits" are an inflated and somewhat dubious calculus of web traffic. Moreover, MT's evidence is further diluted since, again, MT's full firm name appears in various areas throughout the website in addition to the prominent use of "Milbank" on each page. Additionally, the website focuses relatively little attention on MT's real estate practice group, which is unsurprising since the website's purpose is to offer a wide array of information on the firm's various practice areas as well as its attorneys. Finally, the probative value of any of this evidence is questionable since MT has not provided the Court with evidence of how the website looked in 2002. MT claims that the website's present appearance is "consistent" with its appearance in 2002 but this somewhat vague statement does not allow the Court to determine the extent to which "Milbank" was featured on the website.

One of the most important factors that Courts consider when analyzing secondary meaning is whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer. *See Levi Strauss*, 778 F.2d at 1358.[4] The most common and effective way to demonstrate actual association is by means of a survey. *See id.; Echo Drain*, 307 F. Supp. 2d at 1122 (granting summary judgment and noting that the lack of consumer testimony or surveys supported the conclusion that the plaintiff had failed to provide adequate evidence of secondary meaning). Although MT indicated its intent to conduct such a survey to the Magistrate Judge in this action (Mot. at 11:16), no survey has been submitted to the Court. Consequently, the Court has no meaningful evidence of actual association. The Court is left to rely on circumstantial evidence which is nearly non-existent in this case.

The record is further clouded by evidence demonstrating third-party use of "Milbank" in a variety of settings. MRE claims that there are over 200 businesses nationwide with "Milbank" or "Millbank" in their name. (Mot. at 5). MT counters that there are only around 100 entities using "Milbank" in their name. (Pl. Opp. at 4). Regardless of whether the number is 200, 100, or even 50, all of this is relevant because, when a mark is in widespread use, it is less likely to have achieved secondary meaning for the goods or services of one business. *See Levi Strauss*, 778 at 1358 (9th Cir. 1985).

MT is a law firm with a long, distinguished history. Within the legal community it is both reputable and well known. However, there is little evidence that it is commonly associated with the single name "Milbank," even within the narrow cloisters of the legal community, much less among the more general public and/or consumers of non-legal real estate services.

In light of the absence of evidence set forth by MT, the Court finds that no reasonable jury could find that "Milbank" has acquired secondary meaning. Summary judgment is proper.

### B. MT's Dilution Claims

MT has alleged dilution under federal and California law. Both federal and California law require MT to establish that: "(1) the mark is famous; (2) the defendant is making a commercial use of the mark in commerce; (3) the defendant's use of the mark began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services." *Panavision Int'l., L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998) (citing 15 U.S.C. § 1125(c)).

---

[4]Other factors are (1) the degree and manner of advertising under the claimed trademark, (2) the length and manner of use of the claimed trademark, and (3) whether use of the claimed trademark has been exclusive.

MRE claims that summary judgment is proper on MT's dilution claims because "Milbank" is not a famous mark. The Court agrees.

1. *Fame of the Milbank Mark*

Dilution is a cause of action "reserved for a select class of marks - those marks with such powerful consumer associations that even non-competing uses can impinge on their value." *Avery Dennison Corp. v. Sumpton,* 189 F.3d 868, 875 (9th Cir. 1999). For this reason, dilution protection extends only to those whose mark is a "household name." *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 911 (9th Cir. 2002).

a. *Nation-wide Fame*

To determine whether a mark possesses the requisite degree of recognition for protection, the court may consider all relevant factors, including the following: "(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) The extent of actual recognition of the mark; (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register." 15 U.S.C. § 1125(c)(2) (as amended in October 2006 by Trademark Dilution Revision Act of 2006, Pub. L. 109-312, 120 Stat. 1730).

The question of fame is similar to the question of secondary meaning discussed above in connection with MT's unfair competition claims. However, fame is substantially more difficult to prove than secondary meaning. A mark that is famous necessarily has secondary meaning. However, a mark that has secondary meaning is not necessarily famous. Thus, since MT has failed to provide evidence sufficient to establish secondary meaning it has also failed to provide evidence establishing fame.

The Court has considered the same evidence that was considered in connection with secondary meaning which, to recap briefly, is as follows. As of 1999, MT's website was altered to reflect MT's decision to brand itself as "Milbank." During the month of May 2002, the MT website, www.milbank.com, "had over 1.3 million outside hits." (Pl. Opp. at 3:19). MT was ranked as the 9th most profitable firm on the list published by the American Lawyer in July 2001. *Id.* In 2002, MT spent over $2.3 million on marketing and advertising.[5]

The evidence provided by MT falls far short of establishing fame. "To meet the famousness element of protection under the dilution statutes, a mark must be truly prominent and renowned." *Avery Dennison Corp.*, 189 F.3d at 875 (internal quotations and citations omitted). As stated above, the mark must rise to the level of a household name. MT has failed to establish anything like the kind of fame required for dilution protection. Further, evidence demonstrating widespread third-party use of the word "Milbank" is relevant because, when a mark is in widespread use, it may not be famous for the goods or services of one business." *Id.* at 878 (quoting Trademark Review Commission, *Report & Recommendation*, 77 Trademark Rep. 375, 461 (Sept.-Oct. 1987) (internal quotations omitted); *Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1539 (9th Cir. 1989) (affirming the district court's holding that widespread use of elements of a trademark helped to defeat a dilution claim.)

---

[5]Again, MT does not distinguish how much, if any, of this money was spent marketing the name "Milbank" as opposed to marketing the firm in general, using its full firm name.

Accordingly, the Court finds that, as a matter of law, "Milbank" was not a famous nation-wide mark in 2002 when MRE began using the mark commercially.

b. *Niche Fame*

Normally, the question of fame pertains to the entire U.S. However, under the concept of niche fame, some courts have found that a mark is famous within a certain geographic "trade area" or specialized market segment. *See Avery-Dennison*, 189 F.3d at 878 (citing *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 46 (1st Cir. 1998); *Teletech Customer Care Mgt., Inc. v. Tele-tech Co.*, 977 F. Supp. 1407, 1413 (C.D. Cal. 1997). In certain instances, niche fame has been found sufficient to support a dilution claim. *See Id.*

MT argues that its claim of dilution is supported on the theory of niche fame. The Court disagrees for two reasons. First, federal law was recently amended. The amended language appears to preclude niche fame. This change would apply to California dilution law assuming that California continues to faithfully mirror federal law in this area. Second, even if dilution law retains the concept of niche fame, it is inapplicable under these facts.

Amended federal dilution law provides for a definition of fame. Under this definition, a mark is famous if it is "widely recognized *by the general consuming public of the United States* as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2) (as amended in October 2006 by Trademark Dilution Revision Act of 2006, Pub. L. 109-312, 120 Stat. 1730)(emphasis added).[6] Prior to the amendment, the statute contained no language defining fame so specifically or narrowly. Absent contrary binding authority, this Court reads the federal statute according to its plain meaning, a meaning which requires fame to exist among the "general consuming public of the United States."*Id.* Additionally, until and unless the 9th Circuit decides otherwise, the Court will continue to construe California dilution law in accordance with federal law. Accordingly, the Court finds that niche fame does not support MT's claim of dilution. Since, for the reasons above, the Court finds that the "Milbank" mark is not famous, summary judgment is proper.

Finally, the Court notes that even if the amendment to federal law allows for niche fame, that concept is not proper here. Niche fame requires that the junior and senior mark holders occupy the same geographical trading area or the same market segment. *Avery Dennison*, 189 F.3d at 878. MT does not claim that it is famous in a discreet geographical area. Rather, throughout its motion papers, MT insists that its "Milbank" mark is both famous and distinct throughout the entire U.S. Thus MT seeks a nation-wide injunction. However, MT does argue that it is famous within its specialized market segment, that of the "real estate" business. (Opp. at 11:9).

In *Avery Dennison*, the 9th Circuit compared the facts of two cases in determining whether two companies shared a specialized market segment for purposes of niche fame. In *Teletech Customer Care Mgmt, Inc. v. Tele-Tech Co.*, the court found that the two companies shared the same market segment where the plaintiff was "the largest provider of primarily inbound [telecommunications] customer care worldwide" and the defendant provided "engineering and installation services to the telecommunications industry." 977 F. Supp. at 1409. In *Washington Speakers Bureau, Inc. v. Leading Auths., Inc.*, 33 F. Supp. 2d 488 (E.D. Va.1999), both defendant and plaintiff were in the very specialized business of scheduling engagements for well-known lecturers. In the instant case, however, MT and MRE do not

---

[6]California dilution law generally mirrors federal law. *See Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1015 (9th Cir. 2004) (noting how Cal. Bus. Prof. Code § 14330 generally mirrors its federal analogue.)

co-exist within the same specialized market segment. MT is a law firm. They maintain a "real estate practice group" like many large firms. But to characterize MT as a real estate company would be a fiction. Several of MT's rival firms operate significant "entertainment/media practice groups" but they are not properly considered entertainment companies. At best, MT's and MRE's businesses overlap to a small degree. Accordingly, the Court finds the niche fame is inapplicable.

### C. MT's Cyberpiracy Claim

MRE seeks summary judgment on MT's Cyberpiracy cause of action under 15 U.S.C. § 1125(d). MRE claims that MT has not established that there is a genuine issue of material fact that MRE registered the domains "milbank.us" and "milbankre.com" with the bad faith intent to profit from its mark. The Court finds MRE's arguments persuasive.

Under 15 U.S.C. § 1125(d), a defendant is liable to a trademark owner if they did all of the following: 1) registered, trafficked in, or used a domain name; 2) that is identical to or confusingly similar to a mark owned by the plaintiff; 3) the mark was distinctive or famous at the time defendant registered the domain name; and 4) defendant had a bad faith intent to profit from use of plaintiff's mark.

#### 1. *"Milbank.us"*

For the reasons discussed above, MT has not shown that there is a genuine issue of material fact as to the third element of their cyberpiracy cause of action. MT has failed to show that their mark was famous or that the mark may have acquired secondary meaning to support a finding of distinctiveness. Accordingly, summary judgment is proper on MT's cyberpiracy cause of action.

Additionally, MT has failed to produce sufficient evidence to satisfy the fourth element because the balance of factors weigh decisively against finding that MRE had a bad faith intent to profit from its mark. Under 15 U.S.C. § 1125 (d)(1)(B)(i), in order to determine whether the defendant had the requisite bad faith intent, a court may, but is not limited to, consider the following nine factors:

> a. *The Trademark or Other Intellectual Property Rights of the Defendant in the Domain Name*

MRE has not produced evidence that they have a trademark or other intellectual property rights in the domain name. The evidence is undisputed that MRE was unable to register the mark "Milbank" as applied to real estate services. (FF 50). MRE has not provided evidence that it has other intellectual property rights in "milbank.us." Thus, the Court finds that this factor weighs in favor of a finding of bad faith.

> b. *The Extent to Which the Domain Name Consists of the Legal Name of the Defendant or Name That Is Otherwise Commonly Used to Identify the Defendant*

MRE has produced evidence to show that the domain name "milbank.us" consists of the legal name of defendant. The domain "milbank.us" consists of a portion of MRE's legal name. Thus, the Court finds that this factor weighs against a finding of bad faith.

c. *Defendant's Prior Use of the Domain Name in Connection with the Bona Fide Offering of Goods or Services*

MRE has produced evidence to show that it used "milbank.us" in connection with the bona fide offering of services. MT does not dispute that MRE started using "milbank.us" in 2002 to operate a real estate business. (FF 16). Thus, the Court finds that this factor weighs against a finding of bad faith.

d. *Defendant's Bona Fide Noncommercial or Fair Use of the Mark in a Site Accessible under the Domain Name*

Neither MT nor MRE contend that MRE's used "milbank.us" for a bona fide noncommercial purpose, nor that it constituted fair use of the mark. Thus, the Court finds that this factor weighs against a finding of bad faith.

e. *Defendant's Intent to Divert Customers from the Mark Owner's Online Location to a Site Accessible under the Domain Name That Could Harm the Goodwill Represented by the Mark, Either for Commercial Gain or to Tarnish the Mark, by Creating a Likelihood of Confusion as to the Source of the Site*

MT has failed to produce sufficient evidence that MRE intended to divert its customers away from MT's site which could harm their goodwill by creating a likelihood of confusion. MT merely claims that by registering the lower level ".us" domain, MRE evidenced a desire to divert its customers to MRE's site. (FF 18). However, the Court finds this evidence alone insufficient to establish MRE's intent to divert MT's customers. Thus, the Court finds that this factor weighs against a finding of bad faith.

f. *Defendant's Offer to Transfer, Sell or Assign the Domain Name to the Mark Owner or a Third Party for Financial Gain Without Having Used the Domain for a Bona Fide Offering of Goods or Services*

MT has not offered any evidence that MRE offered to transfer, sell or assign "milbank.us" to MT or any other third party for financial gain prior to using it to market its real estate services. MT does not dispute that MRE has not attempted to sell the domain name "milbank.us." (FF 20). Thus, the Court finds that this factor weighs against a finding of bad faith.

g. *Defendant's Provision of Material and Misleading False Contact Information When Applying for the Domain, Intentional Failure to Maintain Accurate Contact Information, or Prior Actions Showing a Pattern of Such Conduct*

MT has not offered any evidence that MRE used false contact information when registering "milbank.us" or that they have intentionally failed to maintain accurate contact information for that domain. Thus, the Court finds that this factor weighs against a finding of bad faith.

h. *Defendant's Registration or Acquisition of Multiple Domain Names Which Person Knows Are Identical or Confusingly Similar to Marks of Others That Are Distinctive at Time of Registration, or Dilutive of Famous Marks That Are Famous at Time of Registration*

For the reasons discussed above, MT has not offered sufficient evidence to show that its mark was distinctive at the time MRE registered "milbank.us." Thus, the Court finds that this factor weighs against a finding of bad faith.

i.  *The Extent to Which the Mark Used in the Domain Is or Is Not Distinctive and Famous*

MT has not offered sufficient evidence to establish that its mark is famous or distinctive, as discussed above. Thus, the Court finds that this factor weighs in favor of a finding of bad faith.

2.  *"Milbankre.com"*

As discussed above with respect to "milbank.us," MT has not offered sufficient evidence to establish that its mark was distinctive or that MRE acted in with the requisite bad faith intent. Accordingly, summary judgment is proper on MT's claims with respect to "milbank.us."

## V. <u>CONCLUSION</u>

For the reasons given above, the Court hereby **grants** summary judgment in favor of Defendant MRE.

**IT IS SO ORDERED.**

 

|  | : |
|---|---|
| Initials of Preparer | slw |

