UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MYRON CORP.,

    Plaintiff,

    v.

HOLLAND USA, INC. D/B/A
AMSTERDAM PRINTING

    Defendant.

Civil Action No.
07-CV-6877 (PAC)

---

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION

Frank J. Colucci (FC-8441)
Richard P. Jacobson (RJ-2843)
Colucci & Umans
218 East 50th Street
New York, New York 10022
Telephone: (212) 935-5700
Facsimile: (212) 935-5728
Email: email@colucci-umans.com

*Attorneys for Plaintiff, Myron Corp.*

**TABLE OF CONTENTS**

**TABLE OF CONTENTS** .................................................................................................. i

**TABLE OF AUTHORITIES** ........................................................................................... ii

I.      **REPLY ARGUMENT** ............................................................................................1

      A.     Introduction............................................................................................................1

      B.     Myron Promptly Asserted Its Trade Dress Rights And Sought A Preliminary Injunction ...........................................................................................2

      C.     The Myron Trade Dress Is Protectable ..................................................................3

      D.     The *Polaroid* Factors Decisively Weigh In Myron's Favor, Thereby Meriting A Preliminary Injunction .........................................................................6

      E.     Granting The Preliminary Injunction Would Only Minimally Impact Defendant, Yet It Would Avert Further Irreparable Harm to Myron ..........9

II.     **CONCLUSION** ......................................................................................................9

## TABLE OF AUTHORITIES

### CASES

*American Express Co. v. American Express Limousine Service Ltd.*,
772 F. Supp. 729 (E.D.N.Y. 1991) ................................................................3

*Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*,
26 F. Supp. 2d 834 (E.D. Va. 1998) ..............................................................2

*Direct Marketing of Virginia, Inc. v. E. Mishan & Sons, Inc.*,
753 F. Supp. 100 (S.D.N.Y. 1990) ................................................................4

*Fruit-Ices, Corp. v. Coolbrands Int'l Inc.*,
335 F. Supp. 2d 412 (S.D.N.Y. 2004) ..........................................................4,7

*Harlequin Enters., Ltd. v. Gulf & Western Corp.*,
644 F.2d 946 (2d Cir. 1981) ..........................................................................5

*Hartford House, Ltd. v. Hallmark Cards, Inc.*,
846 F.2d 1268 (10th Cir. 1988) .....................................................................5

*Karam Prasad, LLC v. Cache, Inc.*,
No. 07 Civ. 5785(PAC), 2007 WL 2438396 (S.D.N.Y. Aug. 27, 2007) ........3

*LeSportsac, Inc. v. K mart Corp.*,
754 F.2d 71 (2d Cir. 1985) ............................................................................4

*Metlife, Inc. v. Metropolitan Nat'l Bank*,
388 F. Supp. 2d 223 (S.D.N.Y. 2005) ...........................................................3

*Paddington Corp. v. Attiki Importers & Distributors, Inc.*,
996 F.2d 577 (2d Cir. 1993) .......................................................................7,8

*Tools USA and Equipment Co. v. Champ Frame Straightening Equip., Inc.*,
87 F.3d 654 (4th Cir. 1996) ...........................................................................5

*Versa Prods. Co., Inc. v. Bifold Co. (Mfg.) Ltd.*,
50 F.3d 189 (3d Cir. 1995) ............................................................................8

*Walmart Stores, Inc. v. Samara Bros., Inc.*,
529 U.S. 205 (2000) .......................................................................................4

*Yurman Design Inc. v. Diamonds and Time*,
169 F. Supp. 2d 181 (S.D.N.Y. 2001) ...........................................................3

## STATUTES

15 U.S.C. § 1057(b) ...........................................................................................................7

15 U.S.C. § 1114(a) ...........................................................................................................1

## SUPPLEMENTAL AUTHORITY

1 J. Thomas McCarthy, *McCarthy on Trademarks and
Unfair Competition* § 8:2 (4th ed. 2004) .........................................................................6

I.  **REPLY ARGUMENT**

   A.  **Introduction**

In its memorandum in opposition to Myron's motion for a preliminary injunction, defendant not only admits that it intended to copy Myron's product, but also that it had in its possession an actual sample of the Myron Trade Dress during the design and development of defendant's product that is now at issue. Although defendant claims "Holland's team set out to make a better product than the Myron Product," defendant instead replicated virtually identically the Myron Trade Dress. (Def.'s Mem. at 4-5; Kirbey Decl., ¶ 4.)

Despite defendant's unapologetic contention that it can blatantly and admittedly take a product created and sold exclusively by Myron, a direct competitor, and copy practically every element and yet avoid liability, it is evident that the undisputed facts now before the Court compel the issuance of a preliminary injunction to halt defendant's infringing activities and prevent irreparable harm to Myron.

Moreover, while defendant argues numerous factual and legal defenses to all of Myron's claims set forth in the complaint, this motion concerns only the Myron Trade Dress, as defined in the complaint and in Myron's motion, and only the most egregious of defendant's infringements, its "Achieve Teamwork" products (defined as the "Infringing Trade Dress"). (Pl.'s Mem. at 9.)[1]

---

[1]   Thus, defendant's arguments directed towards Myron's other claims in the complaint, such as for trademark infringement pursuant to Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(a) (2000), or with respect to other products such as defendant's calendar featuring flying geese rather than the mountain climbers featured in defendant's "Achieve Teamwork" line, are not the subject of the preliminary injunction hearing. Though not at issue in this motion, Myron still maintains that the other products identified in the Complaint are infringements and should be subject to both a permanent injunction as well as compensatory damages.

### B. Myron Promptly Asserted its Trade Dress Rights and Sought a Preliminary Injunction

Defendant's argument that a preliminary injunction should not issue because Myron waited an excessive amount of time to file its motion is meritless.

While defendant sets forth a self-serving timeline in its opposition, the fact is that Myron was not aware of the calendar bearing the Infringing Trade Dress until June 23, 2007. All of defendant's mailings prior to that date did not feature the Infringing Trade Dress; rather they featured the other "geese in formation" infringing products. *Cf. Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*, 26 F. Supp. 2d 834, 853-54 (E.D. Va. 1998) (stating that the court was "not convinced that a single catalog alone would have put [plaintiff] on notice"; preliminary injunction granted where notice was imputed to at the most two and a half years prior to lawsuit). The fact is, once Myron became aware of defendant's "Achieve Teamwork" products with the Infringing Trade Dress, Myron filed its complaint soon afterward on July 31, 2007. Therefore, any further sales of products bearing the Infringing Trade Dress beyond the date of notice of plaintiff's claims were undertaken at defendant's own risk.

Once Myron became aware of the infringing Trade Dress, it contacted its intellectual property counsel, an investigation was conducted, and the complaint was filed on July 31, 2007. Although defendant contends Myron advised the Court of its request for a preliminary injunction at the conference on September 10, 2007, defendant was informed about Myron's intentions on August 29, 2007, when it received the first draft of the joint letter the parties ultimately presented to the Court prior to the conference. Myron only sought preliminary injunctive relief after conducting a full review and investigation of the merits of its claims with counsel, and after it became apparent that defendant had no intention of discontinuing its infringing activities. Defendant would like the Court to believe that an inordinate amount of

time had elapsed from when Myron became aware of the Infringing Trade Dress to the time of filing this motion, thereby barring plaintiff from injunctive relief for defendant's admitted copying. The law in this circuit, however, does not support defendant's position under the circumstances. *See American Express Co. v. American Express Limousine Service Ltd.*, 772 F. Supp. 729, 737 (E.D.N.Y. 1991) (preliminary injunction granted where plaintiff knew of infringement sixteen months before seeking injunctive relief); *Metlife, Inc. v. Metropolitan Nat'l Bank*, 388 F. Supp. 2d 223, 237 (S.D.N.Y. 2005) (preliminary injunction granted where plaintiff had a "relatively modest delay" of three and a half months before bringing suit); *Yurman Design Inc. v. Diamonds and Time*, 169 F. Supp. 2d 181, 184-85 (S.D.N.Y. 2001) (injunctive relief granted where plaintiff knew of infringement three and a half to four months before seeking preliminary injunction).

This Court has recently found a span of approximately three months was no bar to such relief. *Karam Prasad, LLC v. Cache, Inc.*, No. 07 Civ. 5785(PAC), 2007 WL 2438396, at *1 (S.D.N.Y. Aug. 27, 2007) (plaintiff became aware of an allegedly infringing stitching design on jeans on May 12, 2007, filed its complaint five weeks later and moved for a preliminary injunction three months later on August 10th).

Consequently, when all of the facts are considered, it is apparent that Myron diligently acted on its rights and filed this motion in a timely manner.

### C.     The Myron Trade Dress Is Protectable

Defendant asserts that it is acceptable to have intentionally copied the Myron Trade Dress because it is unprotectable, but this argument is wholly without merit. The record before the Court makes it clear that Myron has undertaken great efforts to promote the Myron Trade Dress as a source-identifier since its introduction in 1995.

Defendant's claims that the primary significance of the Myron Trade Dress is merely aesthetic is unsupported by any evidence that defendant will be placed at a significant "competitive disadvantage" if it is unable to use the Myron Trade Dress, which it must do in order to establish that the Myron Trade Dress is functional. *See Fruit-Ices, Corp. v. Coolbrands Int'l Inc.*, 335 F. Supp. 2d 412, 422 (S.D.N.Y. 2004). Further, defendant misapplies the United States Supreme Court's distinction between product configuration or design and product packaging or labeling for purposes of requiring secondary meaning for distinctiveness. (Def.'s Mem. at 13.); *Walmart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 212-13 (2000) (holding that product design, such as a cocktail shaker shaped like a penguin, does not serve as a source-identifier, thus requiring a showing of secondary meaning). Here, Myron asserts a trade dress claim for a design that falls more appropriately under the packaging/label category, rather than product configuration, which would apply to the physical calendar itself.

Aesthetic functionality refers to design or packaging aspects that are purely ornamental, the purpose of which are solely to enhance the visual appeal of the product instead of acting as a source identifier. *LeSportsac, Inc. v. K mart Corp.*, 754 F.2d 71, 78 (2d Cir. 1985). Trade dress encompasses the precise combination of elements, even those ornamental elements that may be visually attractive, unless defendant can prove that this particular design and configuration is essential for effective competition. *Fruit-Ices Corp. v. Coolbrands Int'l Inc.*, 335 F. Supp. 2d at 422. The *Fruit-Ices* court emphasized that the plaintiff sought protection of the precise configuration of elements in the single design of its frozen fruit bar wrapper, rather than securing a monopoly on each of the constituent elements (*i.e.*, fruit imagery, rainbow text, clear wrapper). *Id.*; *see also Direct Marketing of Virginia, Inc. v. E. Mishan & Sons, Inc.*, 753 F. Supp. 100, 106 (S.D.N.Y. 1990) (holding that the trade dress comprised of a "unique collocation

of words, colors and designs on the CAT AND MOUSE WATCH package ... is protected from appropriation"). Likewise, Myron is entitled to trade dress protection for its own precise configuration of elements that decorates the cover of its dated products.

Moreover, that a trade dress may have aesthetic appeal does not preclude it from serving as a source identifier. Numerous courts have granted trade dress protection to designs that incorporate common themes or elements, as does the Myron Trade Dress. *E.g., Hartford House, Ltd. v. Hallmark Cards, Inc.*, 846 F.2d 1268 (10th Cir. 1988); *Harlequin Enters., Ltd. v. Gulf & Western Corp.*, 644 F.2d 946 (2d Cir. 1981) (book cover protected); *Tools USA and Equipment Co. v. Champ Frame Straightening Equip., Inc.*, 87 F.3d 654 (4th Cir. 1996) (trade dress of company's catalog cover protected). In *Hartford House, Ltd. v. Hallmark Cards, Inc.*, the court issued a preliminary injunction to protect the plaintiff's trade dress for greeting cards depicting "non-occasion emotional messages concerning love, personal relationships, and other similar subjects, superimposed on watercolor or airbrush artwork that generally has a landscape motif or nature theme." 846 F.2d at 1269.

The *Hartford House* court recognized that it was not granting an exclusive right to a concept, idea or theme of expression, but rather to the combination of plaintiff's specific artistic expression with other features to produce a particular overall look. *Id.* at 1274. The *Hartford House* court further held that plaintiff's trade dress was not functional in light of the number of alternative designs available, and the feasibility for defendant to "avoid the potential for confusion and compete effectively without having to slavishly copy or imitate the distinctive combination of features comprising [plaintiff's] trade dress." *Id.*

There is no evidence whatsoever that <u>any</u> of the elements of the Myron Trade Dress are necessary for defendant to compete in the marketplace, and defendant does not cite

any. Moreover, as defendant's own examples of third party products illustrate, there is an incalculable variety of images and words that defendant could have utilized for its calendars, yet it admittedly had the Myron Trade Dress "on hand" when it "developed" its "competing" product that virtually simulates Myron's.

### D. The *Polaroid* Factors Decisively Weigh In Myron's Favor, Thereby Meriting a Preliminary Injunction

Since defendant cannot offer any credible defense to the fact that it intentionally copied the Myron Trade Dress, its opposition is predicated primarily on the erroneous proposition that the Myron Trade Dress is unprotectable. Further, defendant's arguments that there is no likelihood of confusion between the Infringing Trade Dress and the Myron Trade Dress are unsupported by the record.

Defendant devotes a great deal of attention to refuting any likely confusion between Myron's trademark TOGETHER WE ACHIEVE THE EXTRAORDINARY and its own use of TOGETHER WE CAN ACHIEVE THE IMPOSSIBLE. However, Myron's claims do not rest solely on its trademark registration of TOGETHER WE ACHIEVE THE EXTRAORDINARY because that is only one element of the Myron Trade Dress. Since trade dress is to be evaluated as a whole and not dissected, defendant's arguments are without merit. *See, e.g.*, 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 8:2 (4th ed. 2004) ("A defendant cannot avoid liability for unfair competition simply by segregating out the various aspects of plaintiff's product, packaging and labels and claiming that no one of these

is protectable in and of itself.").[2]

Defendant's evidence of third party use of similar elements of the Myron Trade Dress is utterly unremarkable. Defendant represented to this Court that "teamwork" appears throughout the dated products industry ... including in association with two mountain climbers and a silhouetted mountain, one helping the other up the mountain." (Tr. of Conf. Sept. 10, 2007 at 9:21-10:1.) Yet, in an attempt to show that the Myron Trade Dress is not distinctive, the best evidence of third party products defendant could muster are three examples of posters that merely headline the word "teamwork" above a motivational saying distinctly different from Myron's or defendant's, and more importantly, these posters do not even feature calendars. (Aita Decl. Ex. E.) However, these designs fail to replicate the "total impression" produced by Myron's distinctive trade dress. *See Fruit-Ices*, 335 F. Supp. 2d at 419 (citations omitted). Perhaps the best indication of the distinctiveness of the Myron Trade Dress is the concession by defendant that it is unaware of any third party that produces a calendar with two mountain climbers. (Jacobson Decl. Ex. 21, pp. 39-40.) A consideration of the "total impression" conveyed by the Myron Trade Dress, including its application to pocket calendars, leads to the conclusion that the Myron Trade Dress is indeed distinctive.

Rather than attempt to refute Myron's evidence of defendant's bad faith, defendant only confirms that it intentionally attempted to trade off the goodwill in the Myron Trade Dress by conceding that it used an actual Myron calendar bearing the Myron Trade Dress to create its own product, which compels a finding of likely confusion. *See Paddington Corp. v.*

---

[2] Moreover, defendant's attempt to collaterally attack the validity of Myron's incontestable registration for TOGETHER WE ACHIEVE THE EXTRAORDINARY disregards a fundamental tenet of the Lanham Act that a trademark registration on the principal register "shall be prima facie evidence ... of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate ...." 15 U.S.C. § 1057(b) (2000). Further, since defendant has not actually filed a cancellation proceeding against Myron's registration of TOGETHER WE ACHIEVE THE EXTRAORDINARY, wherein it would have to substantiate its assertions that the mark has become generic, it cannot be heard to collaterally opine on the registration's validity.

*Attiki Importers & Distributors, Inc.*, 996 F.2d 577, 586-87 (2d Cir. 1993) ("Where a second-comer acts in bad faith and intentionally copies a trademark or trade dress, a presumption arises that the copier has succeeded in causing confusion.") (citations omitted); *see also Versa Prods. Co., Inc. v. Bifold Co. (Mfg.) Ltd.*, 50 F.3d 189, 205 (3d Cir. 1995) ("[A] defendant's intent to confuse or deceive consumers as to the product's source may be highly probative of likelihood of confusion.").

Moreover, defendant's internal legal review process, or lack thereof, seriously questions defendant's commitment to fair competition and adherence to reliable legal practices. Defendant's president, Kevin Kirbey, testified that he had no written documentation to support that a legal opinion was received with respect to the Infringing Trade Dress,[3] and had no recollection whether defendant had sought legal clearance for the Infringing Trade Dress in whole or in part, or whether any changes even resulted from a legal review. (Jacobson Decl. Ex. 21, pp. 44, 48–49.) It is not even clear whether the legal department was provided actual samples of the Infringing Trade Dress or the Myron Trade Dress to consider in its review. (Jacobson Decl. Ex. 21, p. 61.) Yet, an email correspondence dated November 24, 2006, from defendant's employee Jing Mahler, New Product Coordinator, to defendant's manufacturer in China indicates that defendant made sure to provide a copy of plaintiff's product bearing the Myron Trade Dress for replication:

> Do you still have the calendars we sent to you in the beginning (which is one of our competitor's calendars with mountain climbing? If you do, would you please quote that exactly [sic] calendar to us? If you can give us a detailed quote (how much for the material, how much for the paint, how much for the labor, etc.) that would be great.

---

[3] Even more incredulous is that defendant—an established business that employs more than 600 people—has a standard practice of requesting and obtaining legal opinions through a mere telephone call. (Jacobson Decl. Ex. 21, pp. 48–49.)

(Jacobson Decl. Ex. 18, p. 3). Upon further inquiry, defendant concedes that it had no knowledge of any competitors other than plaintiff who produced a calendar with mountain climbing and that the calendar referenced above would have been the one in which the Myron Trade Dress was embodied. (Jacobson Decl. Ex. 21, p. 62.)

### E. Granting the Preliminary Injunction Would Only Minimally Impact Defendant, Yet it Would Avert Further Irreparable Harm to Myron

Since a preliminary injunction will only prevent defendant from selling a product that it admittedly copied from Myron, the harm to defendant, will be minimal. Defendant admits it took a ride on Myron's coattails. Defendant acted irresponsibly at every step, from referring to the Myron Trade Dress during the design and production of defendant's infringing products, to placing large orders for the goods without undertaking legal review, and to persisting in advertising and selling the items despite receipt of a complaint and motion for a preliminary injunction. By contrast, Myron stands to lose the goodwill and equity that it has built in the Myron Trade Dress through years of promotion and sales. The evidence shows the enormous value of a new customer to both parties. Because defendant is using the Infringing Trade Dress to lure new orders, which will likely be renewed in subsequent years, the harm is truly profound.

## II.    CONCLUSION

In conclusion, Myron again submits that it has met all of the requirements for the issuance of a preliminary injunction, and requests that the Court grant its motion.

Dated:    New York, New York
            September 26, 2007

Respectfully submitted,

**COLUCCI & UMANS**

By: /s/ Frank J. Colucci
Frank J. Colucci (FC-8441)
Richard P. Jacobson (RJ-2843)
218 East 50th Street
New York, New York 10022
Telephone: (212) 935-5700
Facsimile: (212) 935-5728
Email: email@colucci-umans.com

*Attorneys for Plaintiff, Myron Corp.*

## CERTIFICATE OF SERVICE

It is hereby certified that a copy of the foregoing "Plaintiff's Reply Memorandum of Law in Support of Its Motion for a Preliminary Injunction" in support of plaintiff's motion for a preliminary injunction has been served by email on defendant's attorney, Mario Aieta, Fross Zelnick Lehrman & Zissu, P.C., 866 United Nations Plaza, New York, New York 10017, on this 26th day of September, 2007.