UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                          :
MYRON CORP.,                        :
                          :
              Plaintiff,    :    07 CV 6877 (PAC)
                          :
                          :
        -against-              :
                          :    <u>ORDER</u>
HOLLAND USA, INC. D/B/A    :
AMSTERDAM PRINTING,        :
                          :
              Defendants.  :
                          :
------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Myron Corp. ("Myron" or "Plaintiff") moves for a preliminary injunction to enjoin defendant Holland, USA, Inc. and Amsterdam Printing ("Holland" or "Defendant") from selling a 2008 pocket calendar which allegedly infringes on the trade dress of a Myron product. For the reasons discussed below, Plaintiff's motion is denied.

## SUMMARY OF FACTS[1]

Myron and Holland[2] are competitors in the sale of personalized calendar products which come in a variety of sizes, shapes, colors and motifs, including small pocket-size versions. Tr. at 13, 86. Marketing and sales for the calendars span from late summer to early winter each year (July through December, with peak sales occurring in September,

---

[1] The following facts are drawn from the preliminary injunction hearing testimony of Sep. 27, 2007, and the parties' hearing and motion exhibits. The hearing transcript is abbreviated as "Tr." and the parties hearing exhibits are abbreviated as "Pl. Ex." and "Def. Ex.," respectively. Exhibits to declarations accompanying the motion papers are abbreviated as "Decl. Ex.".

[2] Since filing its complaint, Myron has learned that Holland operates, or has been affiliated with, a number of businesses under various names which also carry the allegedly infringing products. They are: "Union Pen Company," "AdGraphics," and "Windmill Press." Plaintiff will amend its complaint to reflect these entities.

October and November). Tr. at 17-18, 30, 50, 78. Both Myron and Holland sell their products, in minimum order quantities of 50 units, to small and medium-sized businesses. The products are comprised of two pieces: a removable insert which contains the calendar portion of the product, and a calendar cover, which typically contains artwork and a printed message. Tr. at 92. As part of the ordering process, the businesses ordering the calendars have their names stamped or embossed on the calendar covers, and they use the products as promotional items and as gifts to their own clients and customers. Tr. at 13, 79. The calendars are marketed via catalogs, websites, and direct mailings to prospective and existing customers.[3] Tr. at 13.

In 1995, Myron made a pocket calendar cover featuring the word "TEAMWORK," a mountain climbing scene with two climbers connected by ropes aiding each other up a rocky slope, and an accompanying motivational message: "Together we achieve the extraordinary." Tr. at 15-17. Myron asserts that the combination of the word, the artwork, and the phrase, taken together, constitutes protected "trade dress" under federal trademark law; and that the calendar cover, dubbed "Teamwork Peak," achieved considerable market success. Tr. at 15, 25, 56. Myron reports that it has sold more than 38 million units of dated products featuring the Teamwork Peak trade dress, earning more than $77 million dollars since its commercial introduction in 1998. Tr. at 56. It has expended over $19 million dollars promoting its Teamwork line of products since 2002.[4] Tr. at 20.

---

[3] The direct mailings include a sample of the product, a product catalog from the sending corporation, and a marketing letter. Tr. 1 at 15-19.
[4] This amount includes the cost of mailing catalogs and samples to customers and potential customers, and also encompasses the expenditures for Myron's entire line of "Teamwork" calendars and not only the expenditures for the Teamwork Peak trade dress at issue. Tr. at 43.

Myron became aware that Holland had introduced a line of 2008 calendars that bore the word "TEAMWORK" and contained other similarities to Myron products by June 18, 2007, at the latest. Tr. at 21-23. Thereafter, Myron learned that Holland was also advertising and offering calendars featuring the word TEAMWORK depicting a mountain climbing scene similar, but not identical, to the one on Myron's Teamwork Peak product, and bearing the phrase "Together we can achieve the impossible." According to the president of Holland, the Defendant's mountain climbing product was created, at least in part, due to a desire to compete with Myron's Teamwork Peak line of products. Tr. at 93-95, 101-102.

Six weeks later, on July 31, 2007, Myron filed a complaint asserting that Holland's "slavish" copy of its Teamwork Peak product, along with other various claims of infringement, violated protected trade dress, invited consumer confusion and has caused Myron to lose sales, customers, and goodwill. After Defendant answered, the Court called the parties for an initial pre-trial conference, which was held on September 10, 2007. At that conference, Plaintiff announced that it intended to seek a preliminary injunction. It asked for two weeks, until September 24, 2007, to make its motion.[5] A preliminary injunction hearing was held on September 27, 2007.[6]

---

[5] Myron's complaint encompasses various claims of trade dress and trademark infringement of several Myron products by the Defendant, however, this motion for preliminary injunctive relief is limited to only the Teamwork Peak product.

[6] During the preliminary injunction hearing on September 27, 2007, the Court requested additional briefing from the parties. The additional briefing was provided to the Court on October 1, 2007 and a post-hearing oral argument, addressing the arguments presented in the additional briefing, was held on October 2, 2007.

**DISCUSSION**

**I. Preliminary Injunction Standard**

A preliminary injunction is "one of the most drastic tools in the arsenal of judicial remedies." Hanson Trust PLC, HSCM v. ML SCM Acquisition, Inc., 781 F.2d 264, 273 (2d Cir. 1986).  Since it provides "extraordinary" judicial relief, a preliminary injunction "should not be granted as a routine matter." JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 80 (2d Cir. 1990).  Instead, it is well-settled that in order to obtain a preliminary injunction, a plaintiff must establish: (1) the likelihood of irreparable harm absent injunctive relief, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions regarding the merits of the claim to make them a fair ground for litigation, with the balance of hardships tipping decidedly in the plaintiff's favor.  Louis Vuitton Malletier v. Burlington Coat Factory, 426 F.3d 532, 537 (2d Cir. 2005) (citation omitted).

Of these requirements, "a showing of irreparable harm is considered the single most important requirement in satisfying the standard." Ahmad v. Long Island University, 18 F.Supp.2d 245, 247 (E.D.N.Y. 1998) (citing Alliance Bond Fund, Inc. v. Grupo Mexicano de Desarrollo, S.A., 143 F.3d 688, 696 (2d Cir. 1998) and Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir.1990)).  Further, the issuance of a preliminary injunction is inappropriate "where money damages are adequate compensation." JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir.1990).

   **A.   Irreparable Harm**

In order to demonstrate a likelihood of irreparable harm, the plaintiff bears the burden of showing that "the injury it will suffer is likely and imminent, not remote or

speculative, and that such injury is not capable of being fully remedied by money damages." NAACP v. Town of New Haven, 70 F.3d 219, 224 (2d Cir. 1995) (citation omitted). The party seeking the preliminary injunction "must show a likelihood of irreparable injury, not a possibility of irreparable injury, and likelihood sets, of course, a higher standard than possibility." Museum Boutique Intercontinental, Ltd. v. Picasso, 880 F.Supp. 153, 164 (S.D.N.Y. 1995) (citations omitted) (emphasis added). Moreover, a plaintiff's failure to act promptly in seeking injunctive relief "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." Citibank, N.A. v. Citytrust, 756 F.2d 273, 277 (2d Cir. 1985) (citation omitted) (hereinafter "Citibank"); see also Tough Traveler, Ltd. v. Outbound Prods., 60 F.3d 964, 968 (2d Cir. 1995) (a "presumption of irreparable harm is inoperative if the plaintiff has delayed either in bringing suit or in moving for preliminary injunctive relief.").[7]

Here, Plaintiff sells time-sensitive, dated products within a limited sales window, the peak period of which runs for three months from September through November. Myron knew no later than June 18, 2007, that Defendant was selling a line of products strongly resembling its own. Days later, Myron knew that one of Defendant's new products was very similar to its Teamwork Peak calendar. Despite this knowledge, and the fact that the peak calendar sales season was almost at hand, Myron did not act as promptly as it might if it were truly being irreparably harmed. Myron filed its complaint six weeks later but made no mention of injunctive relief. When the Defendant answered, the Court contacted the parties in order to schedule the initial pretrial conference for

---

[7] The proposition that a plaintiff must act promptly in seeking aid is of ancient origin; the earliest common law required that an injured party must "show that he immediately raised the hue and cry" in order to obtain relief. Oliver Wendell Holmes, Jr., The Common Law 4 (Dover Publications 1991) (1881).

September 10, 2007 and again, nothing was said about an injunction. At the conference, Myron indicated for the first time that it sought an injunction. By then, the parties were already into the peak sales window, but Plaintiff asked for another two weeks to file its motion for preliminary injunction. Such delay clearly undermines the assertion that there exists an 'urgent need' for intervention especially where, as here, the products at issue are dated materials with an abbreviated sales window. Due to its delay in seeking this preliminary injunction, Myron has not met its burden of demonstrating that it will suffer irreparable harm absent injunctive relief.

Moreover, the Court is not satisfied that Myron has demonstrated that legal relief in the form of money damages will not constitute adequate compensation if Myron later succeeds in the trade dress action. In the event that Myron prevails in the underlying suit, it can recover money for losses sustained as a result of the infringement of Teamwork Peak. As to the only potential loss which might not be adequately compensated by money damages, namely, the loss of repeat customers going forward, Myron has no evidence that it has lost any customers.[8] Any loss is remote or speculative. In short, the extraordinary remedy of equitable relief must be denied where, as here, legal relief would provide adequate compensation for the harms that have been demonstrated.

But even if Plaintiff were to demonstrate irreparable injury, no preliminary injunction could be granted. Myron has not established a likelihood of success that it can demonstrate that its trade dress is inherently distinctive, as it must. Further, while

---

[8] See Transcript of Post-Hearing Argument, Oct. 2, 2007 at 13:

> THE COURT: But there's no evidence of loss of renewal customers?
> MR. JACOBSON: That had not been presented. Yes.

Transcript of Post-Hearing Argument, Myron Corp. v. Holland USA, Inc., No. 07 Civ. 6877 (PAC).

6

Plaintiff has clearly demonstrated that it has raised a fair ground for litigation, Plaintiff has failed to establish that the balance of hardships tips decidedly in its favor.

### B.      Likelihood of Success on the Merits: Trade Dress Infringement

To be entitled to a preliminary injunction, a party seeking the injunctive relief must also demonstrate that it will likely be successful on the merits of the underlying claim.  Here, the underlying claim is one of trade dress infringement which is divided into two separate analytical categories: product packaging and product design.  Wal-Mart Stores v. Samara Brothers, Inc., 529 U.S. 205, 209 (2000) (hereinafter "Wal-Mart").  We hold that Teamwork Peak is product design, and not product packaging.

Unlike a product "package," Teamwork Peak's features, including the mountain climber and the inspirational teamwork message, are not intended to identify Myron as the source of the product, but rather, are included because they provide a message which appeals to Myron's small and medium-sized business customers.  The promotional materials which accompany Myron's Teamwork Peak samples in direct mailings bear this out.  The mailings encourage customers to purchase the product because their "commitment to teamwork will be reinforced every day."  Def. Ex. A at A-4.  Such a marketing plan indicates that the appeal of the product comes from the message and the design, not from the fact that the calendar cover is packaging which identifies Myron as the source of the product.  Moreover, unlike typical packaging which, while it serves to identify the source of the product, is unwrapped and discarded, the calendar cover at issue remains with the calendar insert.  The customer does not purchase the Teamwork Peak product and then "unwrap" the calendar from the cover and discard the cover; the

7

calendar and cover are merely two component parts of the whole product. Together, they are the product design.

Therefore, under Wal-Mart, in order to be successful on the merits Myron must meet both prongs of the two-part inquiry for trade dress infringement: it must show that Teamwork Peak is both inherently distinctive and has secondary meaning. Id. at 215. The Plaintiff has not adequately demonstrated a likelihood of success on the inherently distinctive prong of the product design test.

While Myron has demonstrated that it carefully selected the color scheme, artwork, layout, and verbiage for the product, Myron has not yet demonstrated that the trade dress alone serves to identify Myron as the particular source of the product, thus rendering it "inherently distinctive." The Teamwork Peak calendar cover does not bear Myron's name or trademark which would identify Myron as its source; indeed, if anything, it bears the name of Myron's customer, the small and medium-sized business owner. Further, based on the evidence currently before the Court, the primary association of the Teamwork Peak product with Myron comes from the fact that the sample is mailed in a Myron envelope accompanied by a Myron catalog and a letter from Myron. The identification of the source, then, seems to come from the inclusion of the accompanying items and not from the product itself, an association which is more relevant to the analysis of secondary meaning than it is to inherent distinctiveness. As such, according to the evidence currently before the Court, the cover seems to lack the "inherent distinctiveness" that would inextricably link Myron with the Teamwork Peak product. Myron has failed to meet its burden with regard to the 'likelihood of success on the

merits' prong of the preliminary injunction standard, accordingly, the injunction must be denied.

### C. Sufficiently Serious Questions Regarding the Merits of the Claim, with the Balance of Hardships Tipping Decidedly in Plaintiff's Favor

While Myron has demonstrated that there exist sufficiently serious questions regarding the merits of the claim, it has not demonstrated that the balance of hardships tips decidedly in its favor. Indeed, granting a preliminary injunction and prohibiting Defendant from receiving new orders, or filling orders already received, at the peak of its selling season, would impose a tremendous hardship on Holland.

Plaintiff may very well succeed on the merits, but the proof before the Court on this motion does not demand the extraordinary relief that this preliminary injunction would yield. Other than its argument, Myron has produced no evidence of loss or even actual confusion. Moreover, if Myron does ultimately succeed on the merits, it can recover money damages for sales made by Holland of the infringing items in the interim.

## CONCLUSION

Plaintiff's motion for a preliminary injunction is DENIED.

Dated: New York, New York
       October 12, 2007

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge

9

merits' prong of the preliminary injunction standard, accordingly, the injunction must be denied.

### C. Sufficiently Serious Questions Regarding the Merits of the Claim, with the Balance of Hardships Tipping Decidedly in Plaintiff's Favor

While Myron has demonstrated that there exist sufficiently serious questions regarding the merits of the claim, it has not demonstrated that the balance of hardships tips decidedly in its favor. Indeed, granting a preliminary injunction and prohibiting Defendant from receiving new orders, or filling orders already received, at the peak of its selling season, would impose a tremendous hardship on Holland.

Plaintiff may very well succeed on the merits, but the proof before the Court on this motion does not demand the extraordinary relief that this preliminary injunction would yield. Other than its argument, Myron has produced no evidence of loss or even actual confusion. Moreover, if Myron does ultimately succeed on the merits, it can recover money damages for sales made by Holland of the infringing items in the interim.

### CONCLUSION

Plaintiff's motion for a preliminary injunction is DENIED.

Dated: New York, New York
October 12, 2007

SO ORDERED

*Paul A. Crotty*
PAUL A. CROTTY
United States District Judge

9